Charles **HARDY**, et al.

v.

**FIRST AMERICAN BANK, N.A.,** et al.

No. 3:90–0733.

United States District Court,
M.D. Tennessee,
Nashville Division.

July 22, 1991.

**1080**

Stanley M. Chernau, Thomas T. Pennington, Denney, Lackey & Chernau, Nashville, Tenn., for Hardy, et al.

Aleta Arthur Trauger, Nashville, Tenn., for Hilliard & W.L. Lyons, Inc.

E. Clifton Knowles, Nashville, Tenn., for First American Bank, N.A.

Hugh C. Howser, Jr., Nashville, Tenn., for David E. Mills, Jr.

C. Bennett Harrison, Jr., Nashville, Tenn., for Tital Value Equities.

Ames Davis and James W. White, Waller Lansden Dortch & Davis, Nashville, Tenn., for Miller, Miller & Associates, Inc. and St. Cloud Corner, Ltd.

Robert S. Patterson, Boult Cummings Conners & Berry, Nashville, Tenn., for Linc Equities, Inc.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Several defendants' motions to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) or alternatively for a more definite statement under Fed.R.Civ.P. 12(e) are before the Court.

## I. BACKGROUND

■ The factual background of the case involves the sale to plaintiffs by defendants of limited partnership interests in a real estate venture involving a downtown Nashville, Tennessee property known as St. Cloud's Corner. Plaintiffs generally allege that defendants are liable for fraud and failure to register an offering under the federal securities laws and under state common law and statutes. Since this is a motion on the pleadings, only the factual allegations in the complaint are material. The relevant allegations to defendants motions follow.

In their allegations relating to all counts, plaintiffs allege that defendants made misrepresentations during the offering and sale of the St. Cloud partnership units. The offering appears to have begun on April 30, 1987 when plaintiffs allege that the defendants began to pursue sales of the units to private investors. The sale appears to have occurred between August 17, 1987 and October 16, 1987 when plaintiffs allege that an initial closing and two subsequent closings of an escrow account at First American were executed and thereby effectuated their subscriptions to the units. Plaintiffs' complaint goes on to allege the nature and content of several of defendants' misrepresentations. Generally, however, no mention is made of the time or place of or participants in the specific misrepresentations. Plaintiffs also plead that discovery of defendants fraud was not made until just before the filing of this suit because defendants actively concealed the fraud, but do not state any specific circumstances of the discovery. In the individual counts of the complaint, plaintiffs incorporate by reference the alleged facts relevant to all counts, allege defendants' use of the mails and interstate commerce as a basis for jurisdiction where necessary for federal claims, and spell out the general elements that, if proved, would render defendants liable.

■ In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must assume all facts averred in the complaint as true, *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), and indulge all reasonable inferences in favor of the plaintiff. 5A Wright & Miller, Federal Practice and Procedure, § 1357 at 319 (2d ed. 1990). The Court cannot grant such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## II. FEDERAL SUBJECT MATTER JURISDICTION

One defendant argues that plaintiffs have not pleaded federal subject matter jurisdiction properly and therefore the federal claims should be dismissed. Defendant argues that plaintiffs are required to plead that defendants perpetrated the fraud through particular use of the mails or other instrumentalities *in* interstate commerce (i.e. an interstate telephone call) to establish federal jurisdiction.

■ Widely followed Sixth Circuit cases hold that as long as plaintiff alleges use of an instrument *of* interstate commerce (i.e. any telephone call whether inter- or intrastate), such allegation establishes federal subject matter jurisdiction. *Aquionics Acceptance Corp. v. Kollar,* 503 F.2d 1225, 1228 (6th Cir.1974); *Dupuy v. Dupuy,* 511 F.2d 641, 643–44 (5th Cir.1975); *see also Heyman v. Heyman,* 356 F.Supp. 958, 969 (S.D.N.Y.1973). Plaintiff has pleaded such uses of instrumentalities of interstate commerce in each federal count of the complaint. Thus, the complaint withstands the argument for dismissal for lack of federal subject matter jurisdiction.

## III. CLAIMS UNDER SECTION 12(1) OF THE 1933 ACT

In the complaint, Plaintiffs allege that defendants offered or sold them St. Cloud shares, while failing to register the limited partnership offering, thereby violating section 12(1) of the Securities Act of 1933 (1933 Act), and did not meet any of the registration exemptions. In their motion, Defendants counter that, regardless of the merits of this claim, the applicable statute of limitations under section 13 has run. Plaintiffs reply to defendants' limitation defense is that the limitation period has not run, or alternatively, that equitable tolling should apply to the statute of limitations because the case involved fraudulent concealment.

■ Section 12(1) of the 1933 Act creates civil liability for any person who offers or sells securities without registering the offering under section 5 of the 1933 Act. 15 U.S.C. § 77*l*(1). Section 13 of the 1933 act expressly defines the statute of limitations for actions under section 12(1).

> No action shall be maintained to enforce any liability ... created under section [12(1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section [12(1)] more than three years after the security was bona fide offered to the public ...

15 U.S.C. § 77*m*. Notably, a plaintiff has the burden of pleading compliance with the statute of limitations in section 12 actions, since the statute that creates the liability also prescribes the limitation period. *Chambliss v. Coca–Cola Bottling Corp.,* 274 F.Supp. 401, 408–09 & n. 17 (E.D.Tenn.1967), *aff'd per curiam,* 414 F.2d 256 (6th Cir.1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970).

■ For purposes of measuring the one year after the violation limitation, the sale to plaintiffs occurred at the closing of the escrow account at First American which effectuated plaintiffs' subscription to the partnership interests as early as August 17, 1987 or as late as October 16, 1987. Since plaintiffs filed the complaint on August 16, 1990, the alleged sales lie outside the one year statute of limitations period.

Plaintiffs also fail to meet the three year after the offering limitation of section 13. Under section 13, a plaintiff must file a section 12(1) action within three years of when the securities are "bona fide" offered to the public, meaning within three years of the date when the securities are first offered to the public. *Zola v. Gordon,* 685 F.Supp. 354, 360 (S.D.N.Y.1988). According to plaintiffs' complaint, the first offering of the St. Cloud limited partnership interests occurred no later than April 30, 1987, which is more than three years before the filing of this action on August 16, 1990.

With regard to plaintiffs' equitable tolling argument, the Supreme Court recently stated that "the equitable tolling doctrine is fundamentally inconsistent with the 1–and–3–year" statute of limitations such as

that in section 13. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In light of this unequivocal declaration, the Court refrains from applying the equitable tolling doctrine to plaintiffs' action.

## IV. CLAIMS UNDER SECTION 12(2) OF THE 1933 ACT

Plaintiffs claim that defendants made material misstatements and omissions in the written prospectuses and oral representations surrounding the St. Cloud offering in violation of section 12(2) of the 1933 Act. 15 U.S.C. § 77*l*(2). Defendants again counter that plaintiffs have failed to plead affirmatively, as they must, that they come within the applicable statute of limitations under section 13.

■ Regarding section 12(2) claims, section 13 provides:

> No action shall be maintained to enforce any liability under ... section [12(2)] unless brought within one year of the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created ... under section [12(2)] more than three years after the sale.

15 U.S.C. § 77*m*. As with section 12(1), a plaintiff bringing a section 12(2) action must also plead compliance with section 13. *Toombs v. Leone,* 777 F.2d 465, 468 (9th Cir.1985). To plead compliance, a plaintiff must allege sufficient facts to demonstrate that the requirements of section 13 have been satisfied. *Bresson v. Thomson McKinnon Securities, Inc.,* 641 F.Supp. 338, 343 (S.D.N.Y.1986). In section 12(2) actions, this requires a plaintiff to give the time and circumstances of the discovery of the false statement or omission, state the reasons why it was not discovered earlier, and describe a plaintiff's diligent efforts to make or seek the discovery. *In re Consumers Power Company Securities Litigation,* 105 F.R.D. 583, 595–96 (E.D.Mich. 1985); *see also Auslender v. Energy Management Corp.,* 832 F.2d 354, 356 (6th Cir.1987) (burden is on a plaintiff to affirmatively plead why the alleged fraud was not discovered earlier).

■ Plaintiffs' earliest allegation of a sale of the securities to them took place August 17, 1987, just inside three years before the filing of this action, thus fulfilling the second prong of the applicable section 13 limitation rule. Plaintiffs only attempt at pleading compliance with the second prong of section 13 is a general, one sentence allegation that they did not discover the violations of section 12(2) until just before they filed the lawsuit because defendants actively concealed their alleged fraud. They fail, however, to plead the specifics such as the circumstances of the discovery of defendants' fraud, why it was not discovered earlier, and their diligent efforts to make or seek discovery. Therefore, the Court orders a more definite statement of the 12(2) claim. Also, although not enough facts are before the court now, after some discovery, the Court reserves the right to find that discovery of the violations should have been made through reasonable diligence prior to one year before the suit was filed.

## V. CLAIMS UNDER SECTION 10(b) OF THE 1934 ACT

Plaintiff brings claims under section 10(b) of the Securities Exchange Act of 1934 (1934 Act), Rule 10b–5, and Rule 10b–9 for fraud in connection with the sale of securities. Defendants contend, again, that the applicable statute of limitations bars plaintiffs' actions. Plaintiffs contend that defendants seek to apply the wrong statute of limitations. A very recent Supreme Court decision, however, settles the question of which statute of limitations to apply to section 10(b) actions.

The *Gilbertson* case decided a few weeks ago holds that a court, instead of borrowing the analogous state statute of limitations, must apply the 1–and–3–year statute of limitations from section 9(e) of the 1934 Act to 10(b) actions. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, ——, n. 9, 111 S.Ct. 2773, 2782 n. 9, 115 L.Ed.2d 321 (1991). Similar

to section 13, section 9(e) provides that "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i (e).

Plaintiffs appear to have satisfied the second 3-year prong of the statute of limitations—that is, they filed suit within three years of the alleged fraud in connection with the sale of the securities to them. Plaintiffs satisfaction of the first prong, however, is less certain. Plaintiffs may have discovered the facts constituting a violation of 10b–5 prior to one year before the filing of the suit. At this time, insufficient facts are before the Court to decide this issue.

Since the Supreme Court in *Gilbertson* found the applicable limitation provision to be in the 1934 Act itself, it is uncertain whether Rule 10b–5 now requires that plaintiff specifically plead compliance with the section 9(e). The Court, however, need not determine this issue today because its order for a more definite statement of the 12(2) claims above, and of the securities fraud claims below, essentially will require the plaintiff to clarify the facts involving the applicable statute of limitations under section 10(b). Therefore, the Court need not expressly order a more definite statement of the 10(b) claims' compliance with the statute of limitations.

## VI. SUFFICIENCY OF SECURITIES FRAUD CLAIMS UNDER FED. R.CIV.P. 9(b)

Defendants move, under Fed.R.Civ.P. 9(b) which requires fraud to be plead in the particular, to dismiss or for an order for a more definite statement of the securities fraud claims. Plaintiffs reply that to require the level of detail which defendants request would be unduly burdensome.

■ In fraud litigation, a majority of federal courts have interpreted Rule 9(b) as requiring a plaintiff to plead the time, place and content of the alleged false representations. *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980); *see*

*also* Note,*Using Rule 9(b) to Reduce Nuisance Securities Litigation*, 99 Yale L.J. 1591 (1990). In the Sixth Circuit, plaintiffs must also plead a reckless level of intent to state a valid securities fraud action. *Auslender v. Energy Management Corp.*, 832 F.2d 354, 356 (6th Cir.1987); *contra Stern v. Leucadia National Corp.*, 844 F.2d 997, 1004 (2d Cir.1988) (requiring a factual foundation for knowing scienter). Requiring plaintiffs in securities fraud litigation to plead with particularity provides fair notice to defendants and enables them to prepare a proper defense. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Many of plaintiffs' fraud allegations do not indicate the time or place of the alleged frauds as federal courts require under rule 9(b) in securities fraud litigation. Although plaintiffs claims are not so vague as to warrant dismissal, the Court orders a more definite statement of the securities fraud claims, specifically counts two through four of the complaint, in order to enable defendants to properly prepare their defense. At this point, defendants' reckless scienter might be inferred from the allegations in the complaint, but a more definite statement of the circumstances surrounding the specific misrepresentations is needed.

## VII. CLAIMS UNDER TENNESSEE SECURITIES ACT

■ Plaintiffs claim that defendants' acts violated the Tennessee Securities Act. The Tennessee Securities Act requires that a plaintiff commence the action within two years after the violation or one year after the discovery of the violation or one year after discovery should have been made through the use of reasonable diligence, whichever passes first. T.C.A. § 48–2–122(h). The two year period had expired when plaintiffs filed suit in August of 1990 since all initial sales of partnership units to the plaintiffs had been subscribed to by October of 1987. For this reason, the Court dismisses plaintiffs' claims under the Tennessee Securities Act.

## VIII. CLAIMS UNDER TENNESSEE CONSUMER PROTECTION ACT

 Plaintiffs claim that defendants' acts violated the Tennessee Consumer Protection Act (TCPA). In *Nichols v. Merrill Lynch, Pierce, Fenner & Smith*, 706 F.Supp. 1309 (M.D.Tenn.1989) (Higgins, J.), the court held that the TCPA does not apply to securities cases. *Id.* at 1322–23. Applying the *Erie* doctrine to a case of first impression in Tennessee, the court, after a thorough analysis, determined that the Tennessee Supreme Court would probably hold that the TCPA does not apply to the sale of securities. *Id.* The court noted that federal courts do not apply the analogous Federal Trade Commission Act to securities transactions, state courts outside of Tennessee overwhelmingly do not apply consumer protection laws to securities cases, and although the bare language of the Act might be read as applying to securities, ample alternative regulation of securities transactions existed to protect consumers in securities transactions. *Id.* at 1322–25. In the instant case, the Court holds that the *Nichols* analysis is correct and therefore dismisses plaintiffs' claims under the TCPA. *See also French v. Wilgus*, 742 F.Supp. 434, 436–37 (M.D.Tenn. 1990) (Nixon, J.).

## IX. PENDANT STATE LAW CLAIMS

All defendants move that the state law claims be dismissed if the federal claims are dismissed. Since the Court does not dismiss all of the federal claims, the Court refrains from dismissing the state law claims on this ground.

## X. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS dismissal of counts one, six and seven of the complaint, and ORDERS a more definite statement of counts two, three and four. An order and bench opinion consistent with the reasoning herein have been filed previously.