WILLIAM DEPRIEST, GATES-PATE-      )
MCDANIEL, HENRY H. HEADDEN,         )
JOEL P. MORRIS, MAURICE PINSON,     )      Appeal No.
RICHARD R. STANDEL, JR., and W.O.   )      01A01-9609-CH-00428
VAUGHAN, JR.,                       )
                                    )      Davidson Chancery
        Plaintiffs/Appellants,      )      Case No. 90-4042-I
                                    )
VS.                                 )
                                    )
1717-19 WEST END ASSOCIATES, a      )
Tennessee Partnership, MID-TOWN     )
ASSOCIATES, a Tennessee Partnership,)
O'HARE, SHERRARD & ROE, a           )
Tennessee Partnership, and JOHN R.  )
VOIGT, KENNETH R. JONES, JR.,       )
and WILLIAM L. HARBISON,            )
                                    )
        Defendants/Appellees.       )

FILED

March 5, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

J. ROSS PEPPER #014444
222 Second Avenue North
Suite 360-M
Nashville, Tennessee 37201
ATTORNEY FOR PLAINTIFFS/APPELLEES,

EVANS, JONES & REYNOLDS
Winston S. Evans #6281
150 Fourth Avenue North
Suite 1810
Nashville, Tennessee 37219-2424
ATTORNEY FOR DEFENDANTS/APPELLANTS

MODIFIED AND AFFIRMED

                    HENRY F. TODD
                    PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

SAMUEL L. LEWIS, JUDGE,
BEN H. CANTRELL, JUDGE,

| | |
|---|---|
| WILLIAM DEPRIEST, GATES-PATE-MCDANIEL, HENRY H. HEADDEN, JOEL P. MORRIS, MAURICE PINSON, RICHARD R. STANDEL, JR., and W.O. VAUGHAN, JR., | ) ) ) ) ) ) |
| | Appeal No. 01A01-9609-CH-00428 |
| Plaintiffs/Appellants, | ) ) ) Davidson Chancery Case No. 90-4042-I |
| VS. | ) ) |
| 1717-19 WEST END ASSOCIATES, a . Tennessee Partnership, MID-TOWN ASSOCIATES, a Tennessee Partnership, O'HARE, SHERRARD & ROE, a Tennessee Partnership, and JOHN R. VOIGT, KENNETH R. JONES, JR., and WILLIAM L. HARBISON, | ) ) ) ) ) ) ) ) ) |
| Defendants/Appellees. | ) |

# O P I N I O N

The captioned plaintiffs have appealed from the summary dismissal of their various claims

by the trial court. The various claims and defenses on appeal arose from a failed investment scheme,

and are illustrated by the following issues presented by the parties:

<u>Appellants</u>

> 1.      Did the trial court err in granting the Defendants
> Summary Judgment as to the Plaintiffs' claims based on
> breach of contract, negligence, gross negligence, breach
> of fiduciary duty, negligent and fraudulent misrepresenta-
> tion, fraud, tortious interference with contract and
> conspiracy?

> 2.      Did the trial court err in failing to grant to the
> Plaintiffs a summary judgment as to the Plaintiffs' claims
> based on breach of contract and breach of fiduciary duty?

> 3.      Did the trial court err in granting the Defendants'
> Motion to Dismiss the Plaintiffs' claims for punitive
> damages?

> 4.      Did the trial court err in granting the Defendants'
> Motion to Dismiss the Plaintiffs' claims under the
> Tennessee Consumer Protection Act?

> 5.      Did the trial court err in granting the Defendants'
> Motion to Dismiss the Plaintiffs' claims under the

Tennessee Securities Act?

6.      Did the trial court abuse its discretion in granting discretionary costs to the Defendants?

Appellees

I.      Whether the funds were released from escrow in accordance with the terms of the offering documents.

A.  Whether the offering documents required the receipt of subscription agreements for three units or also required cash to pay for those units prior to December 31, 1986.

B.  Whether Plaintiffs' own conduct demonstrates that the offering documents required only receipt of signed subscription agreements prior to December 31, 1986 or also required cash to pay for those subscriptions.

II.     Whether the exculpatory clause in the escrow agreement bars plaintiffs' claims.

III.    Whether the release of funds from escrow, even if wrongful, was the proximate cause of Plaintiffs' loss.

IV.     Whether the claims by Plaintiff Headden are frivolous.

V.      Whether Plaintiffs' claim for punitive damages is frivolous.

VI.     Whether Plaintiffs' claim under the Tennessee Securities Act is barred by the Applicable Statute of Repose, T.C.A. § 48-2-122(h).

VII.    Whether the Tennessee Consumer Act applies to the sale of securities.

VIII.   Whether the trial court abused its discretion in taxing discretionary costs.


The uncontradicted evidence shows that the principal mover and promoter of the scheme was J. Larry Williams, who is not a party to this case by name. He was a general partner in "1717-19 West End Associates" which was the general partner in "Mid-Town Plaza, Ltd." in which plaintiffs were solicited to invest their money. By this relationship, Williams controlled "Mid-Town Plaza, Ltd." in the character of "general partner."

After the bankruptcy of Mid-Town Plaza, Ltd. plaintiffs sued its general partner, Mid-Town Associates, and 1717-1719 West End Avenue, the general partner of Mid-Town Associates, together with O'Hare, Sherrard, Roe, Voigt, Harbison and Jones, a legal partnership which acted as counsel and escrow agent of funds received for investment in Mid-Town Plaza, Ltd..

At the bar of this Court, counsel for plaintiffs disclaimed any legal malpractice by the lawyer defendants, and relied solely upon alleged misfeasance as escrow agent.

The following facts are undisputed:

Prior to the solicitation of the plaintiffs, on May 28, 1986, a certificate of limited partnership was duly registered for Mid-Town Plaza, Ltd., indicating that Mid-Town Associates was the general partner and John R. Voigt was the initial limited partner of Mid-Town Plaza, Ltd. The certificate stated that the purpose of the organization of Mid-Town Plaza, Ltd., was to acquire and renovate property known as 1717-1719 West End Avenue.

In the discussions of investing in the partnership, the plaintiffs were introduced to four documents, a "Confidential Placement Memorandum," a "Subscription Agreement," a "Power of Attorney" and an "Escrow Agreement." The critical portions of these documents relate to the conditions under which the escrow agent was authorized to release the escrowed funds, for the foundation of plaintiffs' claims is that the escrow agent prematurely released the escrow funds to Mid-Town Plaza, Ltd..

The Confidential Placement Memorandum provided that Mid-Town Plaza, Ltd. would accept total investment of $1,700,000.00 which was divided into four "units" of $475,000 each which, in turn, might be divided into eight fractional parts of $59,375.00 each; so that an investor could invest as little as $59,375, and any greater amount in multiples of $59,375.

The Confidential Placement Memorandum originally provided that, if at least three units (3/4 of the offering) was not "subscribed" by October 31, 1986, the proposal would be terminated and all money received from proposed investors would be returned to them. This provision was later amended to change October 31, 1986, to December 31, 1986.

The Confidential Placement Memorandum further provided that legal matters in connection with the financing of Mid-Town Plaza, Ltd. would be "passed upon" by the general partner (Mid-Town Associates) and the law firm of O'Hare, Sherrard and Roe.

The Subscription Agreement provided that all funds tendered by a prospective investor in Mid-Town Plaza, Ltd. would be held in escrow by O'Hare, Sherrard and Roe until the tendering party actually became a limited partner.

On December 23, 1986, Larry Williams, acting for Mid-Town Associates, the general partner of Mid-Town Plaza, Ltd., wrote a letter to the escrow agent directing that the escrow fund be disbursed to Mid-Town Plaza, Ltd.. Attached to the letter was the affidavit of Larry Williams that all conditions for the disbursement had been met. At this time, the escrow agent had received only $1,068,000.70 which was not equal to 3/4 of $1,700,000.00, or $1,425,000. However, "subscription agreements" signed by investors promising to invest a total of $1,425,000 were on-hand.

As of December 31, 1986, the total cash contributions on-hand was $1,306,250, which amounted to 2-3/4 units and not to $1,425,000 or three units.

Subsequent to December 31, 1986, on January 21, 1987, an additional cash contribution of $475,000 was received in performance of a subscription agreement received before December 31, 1986, so that on January 21, 1987, cash had been received from subscribing investors in excess of $1,425,000.00.

Mid-Town Plaza, Ltd. used the funds received from the escrow agent to purchase 1717-1719 West End and to begin renovations. Before the renovations were completed, Mid-Town Plaza Ltd. became insolvent with no assets from which investors could recover any part of their investment.

Plaintiffs' complaint, filed on December 19, 1990, presented a wide variety of grounds of recovery.

On June 26, 1992, the Trial Court dismissed plaintiffs' claims based upon the Tennessee Securities Act and the Tennessee Consumer Protection Act.

On March 24, 1994, the Trial Court dismissed plaintiffs' claims for punitive damages.

On April 19, 1994, the Trial Court dismissed plaintiffs' remaining claims. Said order reads as follows:

> This cause came on to be heard on Thursday, April 7, 1994 before the Honorable Irvin H. Kilcrease, Jr., Chancellor for Part I of the Chancery Court for Davidson County, Tennessee upon Motion of O'Hare, Sherrard & Roe, John R. Voigt, William L. Harbison, and Kenneth R. Jones, Jr. for Summary Judgment Dismissing the Remaining Claims of Plaintiffs. The Motion for Summary Judgment was made on the following grounds:
>
>> I.     The funds of Plaintiffs were released in accordance with the terms of the Escrow Agreement and the Offering Documents.
>> II.     The release of Plaintiffs' funds from escrow, even if that had been contrary to the terms of the Escrow Agreement and the Offering Documents, did not constitute the "willful default" which was prerequisite to any liability.
>> III.     The release of funds from escrow did not proximately cause any harm to Plaintiffs.
>
> Upon consideration of the evidence submitted in support of the motion, the evidence submitted in opposition to the motion, and the statements of counsel on behalf of the parties, the Court is of the opinion with respect to the issues raised in the

motion that there is not genuine issue of material fact with respect to those issues. Accordingly, Defendants are entitled to summary judgment as a matter of law.

In making this ruling, the Court has reconsidered the denial of the Motion for Summary Judgment on the issue of proximate cause which was previously filed by O'Hare, Sherrard & Roe, John R. Voigt, William L. Harbison and Kenneth R. Jones, Jr. Having reconsidered that motion, the Court is now of the opinion that, at this state of the proceedings, the issue of proximate cause should be revisited. The Court has done so and now vacates its earlier Order entered March 1, 1993, in Minute Book 302, Page 62, and grants Defendants summary judgment on that issue.

Plaintiffs' argument states:

The trial court granted the Defendants' Motion for Summary Judgment as to the Plaintiffs' "remaining claims." The "remaining claims" on which the Defendants were granted summary judgment were: breach of contract, breach of fiduciary duty, negligence, gross negligence, negligent and fraudulent misrepresentation, fraud and deceit, tortious interference with contract, and conspiracy. (R. At 841-2). In the Order granting the Summary Judgment as to the remaining claims, the trial court found that there were no genuine issues of material fact with respect to the following grounds alleged by Defendants:

> 1. The funds of Plaintiffs were released in accordance with the terms of the Escrow Agreement and the Offering Documents.
> 2. The release of funds from escrow, even if that had been contrary to the terms of the Escrow Agreement and the Offering Documents, did not constitute the "willful default" which was prerequisite to any liability.
> 3. The release of the Plaintiffs' funds from escrow, even if that had been contrary to the terms of the Escrow Agreement and the Offering Documents, did not constitute the "willful default" which was prerequisite to any liability.

Plaintiffs respectfully submit that the trial court erred in reaching each of these findings.

Plaintiffs insist that the escrow agent violated the escrow agreement by releasing the escrow funds because cash in payment for three units ($1,425,000) had not been received by the escrow agent on or before December 31, 1986, and that the cash contributions should have been returned

to the investors.

The confidential Placement Memorandum stated:

> Once Subscriptions for at least three (3) Units at an aggregate price of $1,425,000 have been received and accepted by the Issuer, the Issuer reserves the right to declare the minimum number of Subscriptions necessary to proceed with the proposed activities have been received, to sell such Units to such Subscribers, and to begin to apply the capital contributions of Limited Partners to partnership activities while continuing to market the additional Units. (Emphasis supplied)

The Subscription Agreement stated:

> The undersigned hereby tenders this Subscription Agreement for _____ unit(s) of limited partnership interests in the Partnership ("Units") at a price per Unit of $475,000, together with a cash payment in the amount of $ _____, in full payment thereof, directed to O'Hare, Sherrard & Roe, Escrow Agent, Midtown Plaza, Ltd.

If the subscriber tendered cash with the subscription agreement, the amount of cash was inserted in the appropriate space. If not, the space was left blank until the cash was deposited.

It clearly appears from the documents that the word, "subscription," meant an agreement or promise to tender the required cash rather than the actual tender which was a separate act which might be simultaneous with the subscription on subsequent thereto.

The confidential Placement Memorandum notified all prospective investors that the general partner (Mid-Town Associates, i.e., Larry Williams) and counsel for the partnership would "pass upon" all legal matters. It appears that the general partner and counsel "passed upon" the legal matter of whether the documents required cash or promise of cash before release of escrow funds.

Moreover, the escrow agreement provided that the escrow agent would not be liable "except

for willful default for breach of duty," which is negatived by the uncontradicted evidence.

Plaintiffs argue that the escrow agent violated a trust by transferring funds from an "escrow account" to an "attorneys trust account," but no damages are alleged as a result of said transfer. Thus, the complaint states no ground for the recovery of damages on account of the transfer.

Defendants next present the defense of "proximate cause" with the argument that the delay of 21 days in receipt of the final installment of the required amount of cash had no causal effect in producing the loss of plaintiffs' investment. However, in order to base a summary judgment on this ground, the defendants must produce evidence that the delay was not one of the proximate causes. No such evidence is cited.

In summary, this Court agrees with the conclusion of the Trial Judge that the uncontradicted evidence shows that the escrow agent acted properly in releasing the escrow funds, and that it was guilty of no actionable misconduct. The same evidence and conclusion excludes any recovery for breach of contract, breach of fiduciary duty, negligence, fraudulent misrepresentation, fraud, tortious interference with contracts, conspiracy, or for punitive damages.

Plaintiffs' allege in their complaint that the general partner, 1717-1719 West End Associates and its partners, committed a violation of the Tennessee Securities Act by filing an amendment to the certificate of Mid-Town Plaza Ltd. reflecting that Gilbert R. Walker (not a plaintiff) and Henry H. Headden, a plaintiff, were limited partners at a time when they had not tendered the cash for his share of the partnership, and by agreeing to and reimbursing Headden for interest paid by him on a bank loan whereby he obtained the cash to belatedly tender for his interest in the partnership. The complaint alleges in general that these acts without notice to the other plaintiffs was a fraud upon them from which they suffered injury. However, the complaint does not specify how they were injured by the alleged fraud, and is subject to dismissal for this reason.

Plaintiffs' action for violation of the Tennessee Securities Act is barred by the two-year statute of repose included in the Tennessee Securities Act, T.C.A. § 48-2-122(h). The misconduct is alleged to have occurred in 1986 or 1987. This suit was commenced December 19, 1990, more than two years after the alleged violations.

Plaintiffs' complaint alleged that the same alleged misconduct of the general partner constituted violations of the Tennessee Consumer Protection Act. In published decisions, federal courts have held that the Consumer Protection Act does not apply to sales of securities. *Hardy v. First American National Bank*, M.D. Tenn., 1991 774 F. Supp. 1078; *Nichols v. Merrill, Lynch, Fenner and Smith*, M.D. Tenn., 1989, 706 F. Supp. 1309.

That portion of the complaint which refers to violations of the Tennessee Securities Act and the Tennessee Consumer Protection Act, does not state a claim for which relief can be granted. This portion of the complaint is therefore subject to dismissal.

Finally, plaintiffs' complain of the order of the Trial Court assessing $9,366.61 discretionary costs against them. Neither brief discusses the ground upon which the costs were taxed.

On May 19, 1994, the defendants/attorneys filed a motion stating:

> O'Hare, Sherrard & Roe, John R. Voigt, Kenneth R. Jones, Jr. and William L. Harbison ["OSR Defendants"], move the Court to assess attorneys' fees and to tax discretionary costs.
> 1.   The assessment of attorneys' fees is sought pursuant to T.C.A. §§ 47-18-109 and 48-2-122(f) for the attorneys' fees expended by OSR Defendants in defending claims asserted by Plaintiffs under the Tennessee Consumer Protection Act and the Tennessee Securities Act. The amount of those attorneys fees is $3,165.00.
>
> 2.   OSR Defendants seek to tax discretionary costs pursuant to Rule 54.04(2), T.R.C.P. The amount of those discretionary costs is $11,594.59, plus fees of A. Neal Graham, Plaintiffs' expert

witness.

The affidavit supporting the motion states only the time spent and charges therefor.

On June 8, 1996, the Trial Court entered an order stating:

> This cause came on to be heard on Friday, June 28, 1996 at the regularly scheduled motion docket for Part I of the Chancery Court of Davidson County before the Honorable Irvin H. Kilcrease, Jr. upon the motion of O'Hare, Sherrard & Roe, John R. Voigt, William L. Harbison, and Kenneth R. Jones, Jr. (OSR Defendants) to assess attorney's fees and to tax discretionary costs.
>
> Upon consideration of the entire record, briefs and argument of counsel, the Court finds that the request to tax discretionary costs is well taken and should be granted. Accordingly, the Court taxes to Plaintiffs, jointly and severally, discretionary costs in the amount of $9,366.61 as set forth and in the motion of OSR Defendants.
>
> With respect to the request for attorney's fees in connection with Plaintiffs' claims pursuant to the Tennessee Consumer Protection Act and the Tennessee Securities Act, the Court finds that those claims did have some legal basis. Therefore, the Court denies the request for attorney's fees.

It appears that defendants requested discretionary costs consisting of attorneys fees in respect to the actions based upon the Tennessee Consumer Protection Act and the Tennessee Securities Act; that the Trial Judge denied the request for attorneys fees in connection with said actions. It also appears that plaintiffs requested and the Trial Court awarded discretionary cost provided by T.R.C.P. Rule 54.04(2) which reads as follows:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains

-11-

jurisdiction over a motion for discretionary costs even
though a party has filed a notice of appeal.

The motion is unsupported by affidavit of grounds for Rule 54.04(2) costs, and the brief of appellants cities no part of the record supporting the award of such costs.

Accordingly, the judgment for $9,366.61 discretionary costs is reversed and vacated. In all other respects the judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellants and their surety. The cause is remanded to the Trial Court for further necessary proceedings.

**MODIFIED AND AFFIRMED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE