**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0857n.06
Filed: October 18, 2005

**Nos. 03-6489, 04-5951**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JACK M. BASS, JR., | | ) |
| | | ) |
| Plaintiff-Appellant, | 03-6489 | ) |
| Plaintiff-Appellee, | 04-5951 | ) |
| | | ) ON APPEAL FROM THE |
| v. | | ) UNITED STATES |
| | | ) DISTRICT COURT FOR |
| JANNEY MONTGOMERY SCOTT, | | ) THE MIDDLE DISTRICT |
| INC.; GARRY A. FULD, | | ) OF TENNESSEE |
| | | ) |
| Defendants-Appellees, | 03-6489 | ) |
| Defendants-Appellants. | 04-5951 | ) |

Before: DAUGHTREY and MOORE, Circuit Judges; ALDRICH,[*] District Judge.

**ANN ALDRICH, District Judge.** This matter is before the court on two appeals. In case 03-6489, Jack M. Bass ("Bass") appeals the entry of judgment in favor of Janney Montgomery Scott, Inc. ("Janney") and two of its senior executive officers, Garry Fuld ("Fuld") and Harry Leopold ("Leopold") (collectively, the "Janney defendants"), on Bass' federal and Tennessee state securities law claims following a bench trial submitted on a written record before Judge Robert Echols of the Middle District of Tennessee. In case 04-5951, Janney and Fuld appeal Judge Echols' denial of their motion for an award of attorneys'

_____

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

fees under Tennessee state securities law as the prevailing party in securities litigation. For the following reasons, we affirm the judgment in case 03-6489 and affirm the denial of attorneys' fees in case 04-5951.

## I.

A more detailed recitation of the facts is contained in this court's previous opinion in this case. *See Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 580-83 (6th Cir. 2000). What follows is a brief summary of the facts relevant to these appeals. This case concerns a private stock placement transaction, underwritten by Janney, where Bass was to provide a "bridge" loan to Technigen Corp. ("Technigen"), a Canadian corporation. Technigen and its president, Lawrence Nesis ("Nesis"), were to use the funds loaned by Bass as operating capital pending the completion of the private stock placement. Bass' loan was to be repaid from the proceeds of the stock placement. In addition, he received warrants for the purchase of Technigen common stock, which presumably would be of value after the successful private stock placement. Unfortunately, the stock placement was unsuccessful, Technigen was unable to repay Bass' loan, and Bass' warrants became virtually worthless.

The district court initially dismissed Bass' federal and state securities law claims, holding that no securities were involved in the transaction. Bass' state misrepresentation claims proceeded to trial before a jury, leading to the prior appeal in this case. *Bass*, 210 F.3d at 583. We reversed in part, holding that the warrants were securities, restored Bass' securities

law claims with respect to the warrants, and remanded. *Bass*, 210 F.3d at 586, 592. On remand, the parties agreed to submit the remaining securities law claims to Judge Echols for a bench trial on the record of the previous jury trial.

Bass advanced three theories for claim of fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"); SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"); and Sections 21 and 22 of the Tennessee Securities Act, TENN. CODE ANN. §§ 48-2-121 to 48-2-122. First, he claimed that the Janney defendants did not tell him about certain negative news articles about Technigen and Nesis, which by Janney's own admission would have stopped the transaction. Second, he claimed that the Janney defendants did not inform him of a consent decree, entered into by Nesis terminating an investigation by the British Columbia Stock Commission in which Nesis admitted making statements about Technigen that he knew or should have known were misleading, until after he wrote the second bridge loan check for $100,000 to Technigen. Third, he claimed that the Janney defendants failed to disclose an internal memorandum which stated a belief that the private placement would fail if Technigen's stock price failed to rebound. In a memorandum and order dated September 30, 2003, Judge Echols entered judgment for the Janney defendants on all the securities law claims.

Most significantly, with regard to Bass' second theory of fraud in connection with the purchase or sale of securities in violation of Section 10(b), Rule 10b-5 and Tennessee

securities law, concerning the Janney defendants' failure to disclose the consent decree, Judge Echols found that Bass had failed to prove damages in connection with the warrants.

Janney and Fuld then moved for an award of attorneys' fees under federal and Tennessee state law, claiming that because judgment was granted in their favor, they were owed reasonable costs, including attorneys' fees. The district court, exercising its discretion, refused the award, noting that it would not do so in a case where Bass' claims had some merit. Janney and Fuld appeal only the denial of attorneys' fees under Tennessee state law.

**II.**

This panel's standard of review of a judgment on the merits from a bench trial is for clear error on findings of fact and *de novo* review of the conclusions of law. *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938 (6th Cir. 1997). In addition, this court may affirm the decision of the district court if correct "for any reason, including one not considered below." *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 243 (6th Cir. 2004) (citation omitted).

*A. Section 10(b) and Rule 10b-5*

In this circuit, a plaintiff must establish six elements to succeed on a Section 10(b)/Rule 10b-5 claim: (1) a misrepresentation or omission (2) of a material fact (3) made

with scienter (4) justifiably relied on by plaintiffs (5) proximately causing (6) damages.[1] *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001) (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1409 (6th Cir.1991)); *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993). In granting judgment to Janney defendants, Judge Echols found that: (1) with respect to the news articles, Bass failed to prove an omission, scienter and justifiable reliance; (2) with respect to the consent decree, Bass failed to prove proximate cause and damages; and (3) with respect to the internal memorandum, Bass neglected to plead the memorandum in his amended complaint and thus failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure. While this court expresses reservations with regard to certain of Judge Echols' findings on different elements of those theories, the finding concerning damages applies to all theories equally and compels the same result.[2]

The Sixth Circuit recognizes two different kinds of damages in Section 10(b)/Rule 10b-5 cases: "rescissory damages" and "out of pocket" damages. *Stone*, 8 F.3d at 1092.

---

[1]A plaintiff must also prove that the jurisdictional element of Section 10(b) and Rule 10b-5 - "by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange" - is satisfied. *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992).

[2]Were this court unable to resolve Bass' appeal of his federal securities claims based solely on the damages question, reversal and remand to consider certain of the other elements would be required, not least of which would be Judge Echols' effective *sua sponte* dismissal of Bass' third theory for failure to comply with Rule 9(b). *See Catz v. Chalker*, 142 F.3d 279, 286 (6th Cir. 1998) (holding that *sua sponte* dismissals are disfavored in the Sixth Circuit, unless the parties have ample notice of the court's intent to dismiss, or have had opportunity to address the issues raised by the dismissal).

Rescissory damages are "'a return of the consideration paid [with interest thereon], reduced by the amount realized when [the security is sold] and by any income received on the security.'" *Id.* (quoting *Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986)). Out of pocket damages are "'the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct.'" *Id.* (quoting *Randall*, 478 U.S. at 661-62).

In this case, Bass never submitted any evidence establishing how much he paid for the warrants alone, what the "fair value" of the warrants alone were, or what the "fair value" of the warrants alone would have been without the Janney defendants' allegedly fraudulent conduct. In his brief, Bass claimed that he submitted evidence concerning his losses, but that evidence only considers the bridge loans and warrants together. At oral argument, Bass' counsel admitted that no attempt had been made to value the warrants apart from the note in the bridge loan transaction. However, as this court previously made clear, Bass had to "prove[] what portion, if any, of the $600,000 purchase price he paid for the $600,000 interest-bearing promissory notes and the stock purchase warrants could be properly allocated to the warrants." *Bass*, 210 F.3d at 587. Because Bass never separately valued the warrants in any way, he failed to establish the damage element for any of his three theories, and thus all of them fail. Judgment in favor of the Janney defendants on all three of Bass' federal securities claim theories must therefore be affirmed.

  *B. Tennessee State Securities Law Claims*

Bass' claims under Tennessee state securities law involve the same three theories as his federal claims. Tennessee state securities law mirrors federal law, specifically Section 10(b), and as such, the elements establishing a violation of Tennessee state securities law are largely the same as those under Section 10(b). *Ockerman v. May Zima & Co.*, 27 F.3d 1151, 1155-57 (6th Cir. 1994); *Constantine v. Miller Indus., Inc.*, 33 S.W.3d 809, 813 (Tenn. Ct. App. 2000). The district court dismissed Bass' state securities law claims because they suffered from the same defects as his Section 10(b) and Rule 10b-5 claims.

On appeal, Bass argues that Tennessee state securities law possesses no scienter requirement, just as he argued before the district court. At oral argument, Bass' counsel claimed that Tennessee state securities law also contained no proximate cause element. However, this court expresses no opinion with regard to either of those assertions because we affirm judgment for the Janney defendants on the basis of Bass' failure to prove damages for his federal and state securities law claims.

### C. Denial of Attorneys' Fees

This court reviews a denial of an award of attorneys' fees for an abuse of discretion. *See* TENN. CODE ANN. § 48-2-122(f); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (citations omitted). An abuse of discretion exists when the trial court "'relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous

legal standard' or 'when the reviewing court is firmly convinced that a mistake has been made.'" *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004) (citations omitted).

Section 48-2-122(f) of the Tennessee Securities Act allows a court, "in its discretion," to award reasonable attorneys' fees to a prevailing party on a claim brought pursuant to the Act. TENN. CODE ANN. § 48-2-122(f). Unlike the federal statute, which only allows attorneys' fees awards in cases "without merit," the Tennessee statute commits the decision solely to the discretion of the trial court. *Compare* 15 U.S.C. § 77k(e) *with* TENN. CODE ANN. § 48-2-122(f).

In considering Janney and Fuld's motion for an award of attorneys' fees, Judge Echols noted that he could find only one case where attorneys' fees had been awarded under Section 48-2-122(f), and that was against a party who had failed to appear at trial. *Omohundro v. Harrison*, No. E200-00666-COA-R3-CV, 2000 WL 1877495 (Tenn. Ct. App. Dec. 27, 2000). Another case from the Tennessee Court of Appeals upheld a denial of attorneys' fees because the claims pressed "did have some legal basis." *DePriest v. 1717-19 West End Assoc.*, 951 S.W.2d 769, 775 (Tenn. Ct. App. 1997). Judge Echols then noted that although he granted judgment for Janney and Fuld on all remaining counts, he also expressly found reckless, fraudulent conduct by the defendants. In light of that finding, Judge Echols exercised his discretion and refused to award attorneys' fees to Janney and Fuld.

Janney and Fuld argue on appeal that Judge Echols made a clear error of law by reading a frivolousness or bad faith requirement into the Tennessee statute. That, however, is plainly untrue. Judge Echols expressly noted the lack of any such requirement. Instead, Judge Echols decided to exercise his discretion and deny an award of fees because of Janney and Fuld's bad conduct. In other words, Judge Echols did not state that the merit in Bass' claims *required* him to deny the award of attorneys' fees. Judge Echols simply stated that the merit in Bass' claims was *sufficient* to convince him to exercise his discretion. We therefore affirm Judge Echols' order denying an award of attorneys' fees.

## III.

For the foregoing reasons, the judgment of the district court in favor of the Janney defendants on the federal and Tennessee state securities law claims is **AFFIRMED**. The order of the district court denying an award of attorneys' fees to Janney and Fuld is also **AFFIRMED**.