# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 3, 2000 Session

# ROBERT SPURLOCK, ET AL. v. SUMNER COUNTY, TENNESSEE, ET AL.

**Certified Question from the United States District Court for the
Middle District of Tennessee
No. 3:96-0926     Robert L. Echols, Judge**

---

**No. M1999-01486-SC-R23-CQ - Filed April 25, 2001**

---

This case comes to us on a question of law certified from the United States District Court for the Middle District of Tennessee.[1]  The question for our resolution is:  "Does a sheriff, when acting in a law enforcement capacity, [act] as a state [official] or [as a] county official under Tennessee law?"  We accept certification and answer that a sheriff acts as a county official under Tennessee law.

**Tenn. Sup. Ct. R. 23 Certification of Question of State Law from Federal Court**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Barbara J. Moss and Andrew B. Campbell, Nashville, Tennessee, for the movant, Sumner County.

Rick Halprin, Chicago, Illinois, for the respondents, Robert Spurlock and Ronnie Marshall.

Michael Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, and Mary M. Bers, Assistant Attorney General, for the Amicus Curiae, the State of Tennessee.

## OPINION

---

[1] Tennessee Supreme Court Rule 23 provides that this Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when "the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee."  We have paraphrased the certified question in this case slightly for the purposes of clarity.

## I. Facts and Procedural History

This cause arises from complaints brought in federal court by Robert Spurlock and Ronnie Marshall, who allege that numerous defendants[2] conspired to wrongfully prosecute, convict, and incarcerate them for a crime they did not commit. On February 21, 1989, the body of Lonnie Malone was found in a culvert near Bug Hollow Road in Sumner County, Tennessee. Malone had died from multiple stab wounds. According to Spurlock and Marshall,[3] Sumner County Sheriff's Department officials immediately focused an investigation upon them. A search of Spurlock's home and automobile the following day, however, produced no evidence linking Spurlock to the crime, and though he provided the officers with an alibi and alibi witnesses, the officers allegedly failed to investigate his claims. Furthermore, Spurlock and Marshall contend that the officers discovered a significant amount of evidence linking others to the murder but ignored this evidence and failed to provide it to them during proceedings wherein they had been indicted for Malone's murder. Subsequently, Henry Apple, an informant, was compelled to falsely implicate Spurlock and Marshall in Malone's murder. Based on Apple's testimony, Spurlock and Marshall were convicted of and sentenced to imprisonment for life.

Marshall appealed his conviction to the Tennessee Court of Criminal Appeals and was granted a new trial. He then entered a "best interest plea" and was given a ten-year probationary sentence. Spurlock also appealed and was granted a new trial based on a finding that the prosecutor failed to furnish exculpatory evidence to Spurlock, failed to correct false testimony given by Apple, and used false evidence in its case in chief. Spurlock was retried. Again, based on Apple's testimony, he was convicted of second degree murder. Thereafter, however, a fresh investigation into the Malone murder uncovered additional information linking others to the crime. As a result of this new information, other individuals confessed to the murder. On March 6, 1996, the convictions imposed upon Spurlock and Marshall again were vacated, and new trials were granted. On October 9, 1996, Spurlock and Marshall filed separate complaints in the United States District Court for the Middle District of Tennessee asserting claims under 42 U.S.C. §§ 1981, 1983, and 1988 based on the defendants' alleged conspiracy to wrongfully convict them by means of perjury, subornation of perjury, and withholding of evidence. The complaints were later consolidated by the district court.

With respect to Sumner County, Spurlock and Marshall sought to hold it liable based on the holding of Monell v. New York City Dept. of Social Services, which provides that local governmental entities may be held liable under 42 U.S.C. § 1983 for policies that cause

---

[2]The complaint names as defendants District Attorney General Lawrence Ray Whitley, Assistant District Attorney General Jerry R. Kitchen, Officer Danny Satterfield of the Sumner County Sheriff's Department, Sumner County, the City of Hendersonville, and Henry Apple.

[3]At the time the district court certified its question to this Court, the cause was before the district court on Sumner County's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In the context of a motion to dismiss, the facts as alleged in the complaint may not be challenged. See Hardy v. First American Bank, 774 F. Supp. 1078, 1080 (M.D. Tenn. 1991). Therefore, we recount the facts as alleged in Spurlock and Marshall's complaint.

constitutional torts. 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Spurlock and Marshall contended that Sumner County Sheriff Richard Sutton was responsible for establishing the law enforcement policies of Sumner County[4] and that they had suffered damages as a result of policies, practices, and customs established or condoned by Sheriff Sutton. In response, Sumner County moved to dismiss the complaint against it, asserting that Sheriff Sutton did not speak with final policymaking authority for the county because Tennessee law provides that sheriffs are state, not county, officers. Thus, they contended, the county is not liable for the sheriff's actions. Finding Tennessee law to be unclear on the issue, the district court certified to this Court the question, previously stated, whether sheriffs, when acting in a law enforcement capacity, act as state officials or as county officials. After a thorough review of applicable authority, we conclude that sheriffs act as county officials under Tennessee law.

## II. Analysis

In McMillian v. Monroe County, Alabama, the United States Supreme Court discussed the analysis to be followed in determining whether a sheriff acts as a state or county official. 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997). In this analysis it noted, "a court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" Id. at 784-85, 117 S. Ct. at 1736-37 (quoting Jett v. Dallas Indep. School Dist., 491 U.S. 701, 737, 109 S. Ct. 2702, 2724, 105 L. Ed. 2d 598 (1989)). The Court set forth two guiding principles to govern the analysis. First, the Court rejected a "categorical, 'all or nothing'" approach, noting instead that "[o]ur cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." Id. at 785, 117 S. Ct. at 1737. "Second," the Court noted, "our inquiry is dependent on an analysis of state law." Id.

While the Court cautioned that "state law [cannot] answer the question for us by . . . simply labeling as a state official an official who clearly makes county policy," the Court nonetheless acknowledged that "our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." Id. at 786, 117 S. Ct. at 1737. Applying these standards, the McMillian Court determined that Alabama sheriffs function as state officers when acting in their law enforcement capacity. Id. at 793, 117 S. Ct. at 1740. However, the Court stressed that its determination was firmly grounded in Alabama law, noting that "since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another." Id. at 795, 117 S. Ct. at 1742.

---

[4] Under Monell, these policies may be set by the governmental entity's lawmakers "or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694, 98 S. Ct. at 2037-38.

Unfortunately, Tennessee law has not always clearly defined whether sheriffs function as state or county officers. As we noted in Davidson County v. Kirk-Patrick, county and state functions are often interdependent under Tennessee law, and thus "[n]o distinct line of demarcation can be drawn between county officers and state officers, with official duty as the only test, nor between county purposes and state purposes with objective as the only test." 266 S.W. 107, 109 (Tenn. 1924). Indeed, this Court's statements regarding whether sheriffs are state or county officers have at times been rather contradictory. Compare, e. g., Boswell v. Powell, 43 S.W.2d 495 (1931) (noting that sheriffs are "essentially state officers"); State ex rel. Little v. Slagle, 89 S.W. 326 (Tenn. 1905) (holding the office of sheriff to be a "lucrative state office" for the purposes of Tenn. Const. art. II, § 26); with Shelby County Civil Service Merit Bd. v. Lively, 692 S.W.2d 15, 16 (Tenn. 1985) (defining sheriffs as "county officials"); State ex rel. Smiley v. Glenn, 54 Tenn. (7 Heisk.) 472 (1872) (listing the sheriff among those officers who are "clearly county officers proper"). Therefore, we must determine whether the greater weight of authority supports defining sheriffs as state or county officers.

Just as the McMillian Court began with an examination of the Alabama Constitution,[5] we begin our analysis by examining the Tennessee Constitution, for it represents the supreme law of our state. See Summers v. Thompson, 764 S.W.2d 182 (Tenn. 1988) (Drowota, J., concurring); Pope v. Phifer, 50 Tenn. (3 Heisk.) 682, 686 (1870), overruled on other grounds by Prescott v. Duncan, 148 S.W. 229 (Tenn. 1912). Significantly, the United States Supreme Court found it "especially important" that the Alabama Constitution listed sheriffs "as members of the state 'executive department'" along with the governor, lieutenant governor, attorney general, secretary of state, state treasurer, and other offices. McMillian, 520 U.S. at 787, 117 S. Ct. at 1738. Our constitution, however, differs from the Alabama Constitution in that it designates sheriffs as members of county government rather than as members of the state executive department. Compare Tenn. Const. art. VII, § 1 (listing the sheriff as an "elected officer" of "county government") with Ala. Const. of 1901, art. V, § 112 (declaring that the state executive department shall consist of various offices including "a sheriff for each county"); cf. Colbert v. Bond, 75 S.W. 1061 (Tenn. 1903) (noting that "a broad distinction is made in the Constitution between state and county officers").

The Tennessee Constitution goes further to provide that the sheriff, along with other county officials, is to be elected by the voters of the county, and vacancies in the office of sheriff are to be filled by the county legislative body. See Tenn. Const. art. VII, §§ 1, 2. Offices other than those designated as offices of county government are dealt with separately in the remaining sections of Article VII of the Tennessee Constitution. See id. art. VII, §§ 3 (state treasurer and comptroller), 4 (all other offices). Thus, under the Tennessee Constitution, Tennessee sheriffs perform their functions more as officials of county government than do their counterparts in Alabama.

Further support for the notion that sheriffs perform their duties as county officers is found in those cases from this Court which distinguish between state and county offices. In Durham v. Dismukes, this Court established the criteria to be examined in deciding whether an office functions

---

[5] See McMillian, 520 U.S. at 787, 117 S. Ct. at 1737.

as one of the county or of the state. 333 S.W.2d 935 (Tenn. 1960). The <u>Durham</u> Court analyzed several factors in determining that the General Sessions Court for Sumner County was a county office rather than a state office. <u>Id.</u> at 938. Most significant, the Court considered which entity bore the expenses of the office, noting:

> The Legislature in its wisdom . . . did not see fit to undertake that the State pay the compensation for the operation of this office, but provided that the operation of the office, salaries of the officials, etc. should be paid by the county. The primary badge of a State officer is that the Legislature provide that the State pay the salary of the office.

<u>Id.</u> In addition, the Court noted that the legislative act establishing the office of General Sessions Judge did not evince any intent to create a court "the jurisdiction of which should extend beyond the county," and the "overall duties [of the office] are applicable to the people of the county alone." <u>Id.</u> at 938.

The factors of the <u>Durham</u> test weigh in favor of a finding that the sheriff is a county officer. The legislature has provided that the county, not the state, pays the sheriff's salary and bears the expenses of the office. <u>See generally</u> Tenn. Code Ann. §§ 8-24-101 to -118 (providing for compensation of clerks and "county officers," including sheriffs). Thus, because the legislature has not provided that the State should pay the sheriff's salary, the office of sheriff lacks the "primary badge of a State officer." <u>See</u> <u>Durham</u>, 333 S.W.2d at 938.

Furthermore, the duties of the sheriff when acting in his or her law enforcement capacity ordinarily extend only to the borders of the county in which the sheriff was elected. <u>See</u> Tenn. Code Ann. § 38-3-102 (1999) (providing that "[t]he sheriff is the principal conservator of the peace in the sheriff's county"); <u>see also</u> <u>State ex rel. Thompson v. Reichman</u>, 188 S.W. 225 (Tenn. 1916) (noting that the sheriff "is the commander in chief of the law forces of the county"). Moreover, the overall duties of the office of sheriff, which are defined by statute, are largely applicable within the sheriff's county. <u>See, e.g.</u>, Tenn. Code Ann. §§ 8-8-201(2)(A) (duty to "[a]ttend upon all the courts held in the county"); -201(3) (duty to "[t]ake charge and custody of the jail of the sheriff's county, and of the prisoners therein"); -201(5)(A) (duty to "[e]xecute all writs and other process legally issued and directed to the sheriff, within the county"); -201(6) (duty to "[e]xecute every notice to take depositions, delivered to the sheriff, for any party residing in the county"); -201(34) (duty to "[e]nforce the ordinances of a municipality" within the county, providing the municipality expresses its intent for the sheriff to do so); -209 (duty to "return the truth of the case" when process directed to the sheriff is to be served upon a person who "is a known inhabitant of another county"); -211 (providing penalties for the sheriff's failure to prevent lynching in his county); -213 (ability to "summon the body of the county to [the sheriff's] aid, in order to keep the peace"). Thus, under the test set forth in <u>Durham</u>, the sheriff appears to act as a county officer.

In addition to the criteria set forth in <u>Durham</u>, the language of a number of statutory provisions indicates an intent on the part of the legislature to treat sheriffs as county officers. While

these provisions may not be directly applicable to this case, they nonetheless support the contention that Tennessee law views sheriffs as county officers, not state officers. For example, Tenn. Code Ann. § 8-22-101 (1993), which restricts fees for services performed by clerks and county officers, lists sheriffs as among the "county officers" to whom the statute applies, and Tenn. Code Ann. § 8-22-103 (1993) provides that excess fees collected by such officers, again including the sheriff, are the property of the county. Even more significant is the legislature's treatment of the sheriff under the Governmental Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-101 to -407 (2000).[6] In McMillian, the United States Supreme Court found it particularly noteworthy that, under Alabama law, the State was liable in tort for the official acts of the sheriff. 520 U.S. at 789, 117 S. Ct. at 1738-39. In contrast, Tennessee law under the GTLA provides that the county bears the liability for the sheriff's torts. The GTLA applies to municipal, county, and local governments, but not to the State government or its agencies or departments,[7] and the definition of "employee" under the GTLA provides, in pertinent part, that it includes "any official, whether elected or appointed, . . . including the sheriff and the sheriff's employees." Tenn. Code Ann. § 29-20-102(2) (2000) (emphasis added). Thus, Tennessee law differs from that of Alabama because a suit brought in Tennessee based on the sheriff's official acts is brought against the county, not the State. Compare McMillian, 520 U.S. at 789, 117 S. Ct. at 1738-39 (observing that, under Alabama law, "tort claims brought against sheriffs based on their official acts . . . constitute suits against the State, not suits against the sheriff's county").

We cannot accept Sumner County's argument that sheriffs must be state officers because they derive their law enforcement authority from state statutes, not county ordinances. While this argument indeed weighs in favor of viewing sheriffs as state officers, we find the force of this assertion to be limited. As pointed out by Justice Ginsburg, dissenting in McMillian, most states give sheriffs "complete authority to enforce the state criminal law in their counties," and so this factor, if given great weight, would yield "an allstate categorization of sheriffs [as state officers], despite the Court's recognition that such blanket classification is inappropriate." 520 U.S. at 801, 117 S. Ct. at 1745 (Ginsburg, J., dissenting). Furthermore, Sumner County's argument is rather circular. Sumner County bases its argument upon the premise that counties have no law enforcement authority of their own; yet, if the legislature views the sheriff as a county officer, then the legislature's grant of law enforcement authority to the sheriff appears to serve as a grant of law enforcement authority to the county, albeit to be exercised exclusively through the office of the county sheriff. Because we find the legislature's statutory grant of law enforcement authority to the

---

[6]Sumner County correctly notes that the GTLA is not applicable to this case because that statute does not waive immunity for intentional torts such as the ones alleged in this case. See Tenn. Code Ann. § 29-20-205 (2000) (preserving governmental immunity from various intentional torts, including civil rights violations); Jenkins v. Loudon County, 736 S.W.2d 603 (Tenn. 1987) (holding that "the GTLA is generally intended to exclude intentional torts"). However, we reiterate that our purpose in citing the GTLA is not to hold whether the sheriff bears any state tort liability in this particular case, but to demonstrate that the legislature, by designating the county (and not the State) to be the responsible body under the GTLA for the acts of the sheriff, has indicated that it views the sheriff to be a county officer and the county should be the entity directly accountable for the acts of that office.

[7]See Tennessee Dept. of Mental Health and Mental Retardation v. Hughes, 531 S.W.2d 299, 300 (Tenn. 1975).

sheriff to be of limited significance, we conclude that this argument fails to outweigh the support found in the Tennessee Constitution, case law, and statutes in favor of the proposition that a sheriff acts as a county officer when enforcing the state's laws.

We recognize that the analysis employed in Durham v. Dismukes, upon which we have relied for support, is rather inconsistent with the holding of an earlier case, Dykes v. Hamilton, 191 S.W.2d 155 (Tenn. 1945). In Dykes, the Court held that "the mere fact that a person may hold an important public office whose duties are strictly confined to county affairs, and his salary paid by the county, does not make it a county office." Id. at 158 (citing Prescott v. Duncan, 148 S.W. 229 (Tenn. 1912)). Thus, the Court held, the office of Humane and Juvenile Court Commissioner for Hamilton County was a state office, despite the expenses of the office being borne by the county and despite the office serving county purposes, because the juvenile court was "clothed with [the] authority to enforce state laws" and the judge's authority "in the enforcement of laws for the protection of women and children is not simply county-wide in effect, but involves the peace and the well-being of society generally." Id. at 159.

However, to the extent that the rationales relied upon by Dykes apply to the office of sheriff, they also apply to the Sumner County General Sessions Court found to be a county office in Durham and to a number of other offices which have subsequently been held to be county offices by this Court through application of the factors enunciated in Durham. See, e.g., Lawler v. McCanless, 417 S.W.2d 548, 553 (Tenn. 1967) (finding the General Sessions Court for Gibson County to be a county office despite its having "jurisdiction over certain state matters"); Stambaugh v. Price, 532 S.W.2d 929, 933 (Tenn. 1976) (finding the office of Juvenile Court Judge for Hamblen County to be a county office); Walters v. State ex rel. Schmutzer, 583 S.W.2d 756 (Tenn. 1979) (finding the office of Judge of the Juvenile Court for Sevier County to be a county office); State ex rel. Winstead v. Moody, 596 S.W.2d 811 (Tenn. 1980) (finding the office of General Sessions Judge of Hamblen County to be a county office). Because Dykes has been all but disregarded by this line of subsequent authority, we must conclude that the authority of that case has been somewhat curtailed. Moreover, the case of Prescott v. Duncan, upon which the Dykes court relied, engaged in a detailed analysis of the history of county government, and it listed the sheriff among those officers who perform "function[s] of local-self government" within the county. 148 S.W. 229, 233 (Tenn. 1912). Therefore, we find Dykes to be not fully persuasive in determining whether a sheriff functions as a county or a state officer.

Finally, we recognize that the McMillian Court reached a different conclusion in determining that Alabama sheriffs serve as state officials when acting in their law enforcement capacity. However, we agree with the statement of the United States District Court for the Middle District of Tennessee, which noted:

> As emphasized by the McMillian Court, the question of whether an
> officer is a policymaker for any governmental entity must be
> determined by reference to state, not federal law. What Alabama law
> might have to say regarding its officers has no bearing on whether a

> Tennessee [official] receives his [or her] decisionmaking authority
> from the state or county government.

Pharris v. Looper, 6 F. Supp. 2d 720, 730 (M.D. Tenn. 1998). In sum, though Tennessee law has not been entirely clear or consistent in denominating the role of the sheriff, we find the greater weight of authority to support the proposition that the sheriff serves as a county official when acting in his or her law enforcement capacity. The Tennessee Constitution, the line of cases from this Court distinguishing between state and county officials under the Durham test, and Tennessee statutes all provide support for this proposition. To adopt a statement from Justice Ginsburg's dissent in McMillian, we hold that under Tennessee law, "[a] sheriff locally elected, paid, and equipped, who autonomously sets and implements law enforcement policies operative within the geographic confines of a county, is ordinarily just what he [or she] seems to be: a county official." McMillian, 520 U.S. at 804, 117 S. Ct. at 1746 (Ginsburg, J., dissenting).

### III. Conclusion

For the foregoing reasons, we answer the question certified to us by the United States District Court for the Middle District of Tennessee as follows:

> A sheriff, when acting in a law enforcement capacity, acts as a county
> official under Tennessee law.

Costs on this matter are taxed to the movant, Sumner County, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE