IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 3, 2003

## GLENDA COOPER v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission, Eastern Division**
**No. 20101387     Vance W. Cheek, Jr., Commissioner**

**FILED JANUARY 27, 2003**

**No. E2002-02415-COA-R3-CV**

This is a wrongful death action filed against the State of Tennessee[1] with the Tennessee Claims Commission. The State filed a motion for judgment on the pleadings, asserting that it was not liable for the actions of the Bradley County Sheriff, whose negligence is alleged to be the proximate cause of the death of the plaintiff's intestate. The Claims Commission, relying upon the case of *Spurlock v. Sumner County*, 42 S.W.3d 75 (Tenn. 2001), held that the sheriff was not a state employee[2] but rather a county officer. It dismissed the claim against the State. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

John C. Cavett, Jr., Chattanooga, Tennessee, for the appellant, Glenda Cooper, individually and as the Administratrix of the Estate of William Burl Cooper, II.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Hudson, Senior Counsel, for the appellee, State of Tennessee.

**OPINION**

---

[1] The plaintiff's claim also named as defendants Bradley County and its county sheriff, Daniel R. Gilley. These claims are not before us on this appeal.

[2] "State employee" is defined in Tenn. Code Ann. § 8-42-101(3)(A) (2002). *See also* Tenn. Code Ann. § 9-8-112(a) (1999).

I.

Glenda Cooper sued the State in her individual capacity and as the Administratrix of the Estate of William Burl Cooper, II. Her complaint arises out of the death of her son, who was shot and killed by one Travis Best, a former state prisoner, on April 7, 2000. The complaint alleges that Best had previously been serving a state sentence in the custody of the Sheriff of Bradley County at the county workhouse. It is alleged in the complaint that the sheriff illegally released Best before he had fully served his sentence. The plaintiff charges that the sheriff is legally responsible for her son's death and that his malfeasance occurred while the sheriff was serving both as an agent of Bradley County and as an agent of the State.

As previously indicated, the Claims Commission determined that the sheriff was not a state employee and that, consequently, the plaintiff could not pursue a claim against the State. The plaintiff appeals, contending the sheriff was acting as a state employee when he improperly released Best. The issue on this appeal is simply this: Does a county sheriff act as a state employee when he or she takes action with respect to a state prisoner in the sheriff's custody?

II.

Both parties rely upon language in the Supreme Court case of *Spurlock v. Sumner County*, 42 S.W.3d 75 (Tenn. 2001). In *Spurlock*, the Sumner County Sheriff's Department investigated the plaintiffs in connection with a murder. *Id.* at 76. In their complaint, the plaintiffs alleged that, in spite of a lack of evidence connecting them to the crime, the sheriff's department continued to focus the investigation on them. *Id.*

The fabricated testimony of an informant led to the plaintiffs' convictions and sentences of life imprisonment. *Id.* Subsequently, a new investigation into the murder revealed information that eventually resulted in other individuals confessing to the murder. *Id.* Thereafter, the plaintiffs' convictions were vacated. *Id.*

The plaintiffs then filed suit against, among others, Sumner County in the United States District Court for the Middle District of Tennessee, claiming that the defendants had conspired to wrongfully convict the plaintiffs of murder, in violation of 42 U.S.C. §§ 1981, 1983, and 1988. *Id.* The plaintiffs premised their claim against Sumner County on *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), which held that liability may be imposed against local governments for policies that give rise to constitutional torts. The plaintiffs argued that they were harmed by the law enforcement policies established by the Sumner County sheriff. *Spurlock*, 42 S.W.3d at 77. In a motion to dismiss, Sumner County countered that the sheriff "did not speak with final policymaking authority for the county," as the law in Tennessee recognizes the sheriff as a county officer rather than a state officer. *Id.* Because the district court found the law in Tennessee to be ambiguous on this subject, it certified the following question to the

Tennessee Supreme Court: "'Does a sheriff, when acting in a law enforcement capacity, [act] as a state [official] or [as a] county official under Tennessee law?'" *Id.* at 76 (bracketing in *Spurlock*).

The Tennessee Supreme Court began its analysis with an examination of *McMillian v. Monroe County*, *Alabama*, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997), in which the United States Supreme Court was faced with the issue of whether an Alabama sheriff was a state or county official. The United States Supreme Court adopted two principles to guide its analysis:

> First, the question is not whether [the sheriff] acts for Alabama or Monroe County in some categorical, "all or nothing" manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue....Thus, we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether [the sheriff] represents the State or the county when he acts in a law enforcement capacity.

> Second, our inquiry is dependent on an analysis of state law.... This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law....

*Id.* at 785-86, 117 S. Ct. at 1737 (citations omitted). The Court then determined that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793, 117 S. Ct. at 1740. However, the Court went on to state that "since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another." *Id.* at 795, 117 S. Ct. at 1742.

After examining *McMillian*, the Tennessee Supreme Court – noting that "Tennessee law has not always clearly defined whether sheriffs function as state or county officers"– sought to clarify the law on this issue. *Spurlock*, 42 S.W.2d at 78. Following the road map of *McMillian*, the Court first looked to the Tennessee Constitution, which "designates sheriffs as members of county government rather than as members of the state executive department." *Spurlock*, 42 S.W.3d at 78 (citing Tenn. Const. art. VII, § 1). Second, the Court stated that the Tennessee Constitution provides that "the sheriff, along with other county officials, is to be elected by the voters of the county, and vacancies in the office of sheriff are to be filled by the county legislative body." *Spurlock*, 42 S.W.3d at 78 (citing Tenn. Const. art. VII, §§ 1, 2). Third, state law provides that the county rather than the state is responsible for paying the sheriff's salary and other expenses associated with the

office.  ***Spurlock***, 42 S.W.3d at 79; *see generally* Tenn. Code Ann. § 8-24-101, *et seq.*  (2002).  The Court reasoned that this factor supported a holding that the sheriff was a county officer, predicated on the Court's earlier observation that "'[t]he primary badge of a State officer is that the Legislature provide that the State pay the salary of the office.'"  ***Spurlock***, 42 S.W.3d at 79 (quoting ***Durham v. Dismukes***, 206 Tenn. 448, 454, 333 S.W.2d 935, 938 (1960)).

In addition, the Court pointed out that the sheriff's duties "when acting in his or her law enforcement capacity ordinarily extend only to the border of the county in which the sheriff was elected," ***Spurlock***, 42 S.W.3d at 79 (citing Tenn. Code Ann. § 38-3-102 (1997)), and that "the overall duties of the office of sheriff, which are defined by statute, are largely applicable within the sheriff's county."  ***Spurlock***, 42 S.W.3d at 79; *see generally* Tenn. Code Ann. § 8-8-201, *et seq.* (2002).  The Court also found it quite significant that the Governmental Tort Liability Act ("the GTLA") provides that counties are liable for the negligent acts of their sheriffs under certain circumstances.  ***Spurlock***, 42 S.W.3d at 80 (citing Tenn. Code Ann. § 29-20-101, *et seq.* (2000 & Supp. 2002)).

Relying upon these and other factors, the Court clarified Tennessee's ambiguous position with respect to the governmental classification of a sheriff by holding that "the sheriff serves as a county official when acting in his or her law enforcement capacity."  ***Spurlock***, 42 S.W.3d at 82.  The Court expounded upon this holding by adopting the language used by Justice Ginsburg in her dissent in ***McMillian***, stating that, in Tennessee, "'[a] sheriff locally elected, paid, and equipped, who autonomously sets and implements law enforcement policies operative within the geographic confines of a county, is ordinarily just what he [or she] seems to be: a county official.'" ***Spurlock***, 42 S.W.3d at 82 (quoting ***McMillian***, 520 U.S. at 804, 117 S. Ct. at 1746 (Ginsburg, J., dissenting)) (bracketing in ***Spurlock***).

## III.

We agree with the State's interpretation of the ***Spurlock*** case as it relates to the facts of the case at bar.  When the sheriff released Best from his custody, the sheriff was acting in his role as a law enforcement officer.  As sheriff, he was responsible for the county workhouse.  It is clear that the prisoners housed there – be they state prisoners or county inmates – were in the sheriff's custody *because* he was the chief law enforcement officer of Bradley County.  The responsibilities related to the care and custody of prisoners held in county facilities are obligations imposed by law upon county sheriffs, *see* Tenn. Code Ann. § 8-8-201(3) – sheriffs being the individuals who have been elected by the people of the various counties to perform these and other law enforcement functions. If the sheriff was guilty of actionable negligence in releasing Best and that negligence was the proximate cause of the death of the plaintiff's son, Bradley County is legally responsible for the sheriff's conduct under the GTLA.  *See* Tenn. Code Ann. § 29-20-102(2), (3) (2000).  The State of Tennessee is not.  Under ***Spurlock***, it is clear that the sheriff was not acting as an employee or agent of the State when he released Best.

IV.

The judgment of the Claims Commission is affirmed. This matter is remanded to the Claims Commission for the collection of costs assessed there, pursuant to applicable law. Costs on appeal are taxed to Glenda Cooper.

_____
CHARLES D. SUSANO, JR., JUDGE