IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 28, 2009 Session

## CASSANDRA LYNN RUDD v. HOWARD THOMAS RUDD

**Direct Appeal from the General Sessions Court for Hardin County**
**No. 6677    Daniel L. Smith, Judge**

**No. W2009-00251-COA-R3-CV - Filed December 9, 2009**

This is an appeal from a parenting plan entered by the trial court in a divorce case. Appellant/ Father and Appellee/Mother entered into a Marital Dissolution Agreement, settling all issues except for the parenting plan. Following a hearing in which daughter, age 13, testified, the trial court entered a permanent parenting plan granting primary residential status to the Mother, allowing Mother to relocate, and granting the Father no parenting time with either of the parties' two minor children. Father appeals from this decision and objects to the daughter's testimony. Upon review of the record, we find that the Father waived his right to object to daughter's testimony and that the trial court did not err in granting primary residential status to Mother nor in allowing her to relocate. However, we find that the trial court erred by failing to make specific findings of harm caused by visitation and failing to determine the least restrictive visitation plan available. Accordingly, we vacate the trial court's decision on visitation and remand for further hearing and entry of a visitation plan. Affirmed in part, vacated in part and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Vacated in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., joined and HOLLY M. KIRBY, J., separately concurred.

Curtis F. Hopper, Savannah, Tennessee, for the Appellant, Howard Thomas Rudd.

Terry L. Wood, Corinth, Mississippi, for the Appellee, Cassandra Lynn Rudd.

**OPINION**

Howard Rudd ("Father") and Cassandra Rudd ("Mother") were married in October 1991. Mother filed for divorce on August 20, 2007, alleging grounds of inappropriate marital conduct and irreconcilable differences. There were two children born of the marriage, a son ("R.R"), born in 1992, and a daughter ("S.R."), born in 1995. R.R. was born with DiGeorge Syndrome and is severely mentally handicapped and suffers from a heart condition. R.R. needs assistance with personal needs including bathing and personal hygiene and functions on approximately a third grade

level. In August 2007, S.R. accused Father of sexual assault. Subsequently, Father was indicted for sexual battery and assault, but was later acquitted, and the charges were expunged from his record.

A temporary parenting plan was entered on August 20, 2007, granting no parenting time with either child for Father. On November 15, 2007, an amended parenting plan was entered. This plan allowed Father visitation with R.R. for two hours each week. Mother was to supervise this visitation, and it was to take place at the bowling alley. In addition, Father was allowed to have lunch with the R.R. at school one day a week, and was granted two phone calls a week with R.R. The amended parenting plan did not allow Father to have any contact with S.R. An "Order on Review of Temporary Parenting Plan" was entered on November 15, 2007; the Order specifically states that "Father shall not be permitted any parenting time with the minor children."[1] Another order was entered on December 20, 2007. This Order granted Father one additional night of supervised visitation with R.R. at the bowling alley, which visitation was to replace the previously granted weekly lunch at R.R.'s school. The Order also provided for supervised visitation for two hours on Christmas Day at Father's home. Mother and Father entered into a Marital Dissolution Agreement and were granted an absolute divorce on April 28, 2008; the court reserved all issues regarding the Permanent Parenting Plan for a future hearing.

Mother sent a letter to Father in August 2008 notifying him of her intent to move to Victoria, Texas. In December 2008, Father filed a motion in opposition to Mother's proposed move to Texas. Father, in his motion, alleged that the sole purpose of the move was to deny Father parenting time. Consequently, he asked that, in the event the court should allow Mother to move, he be granted primary residential parenting status.

A hearing was held on November 17, 2008, on the parenting plan issues. At this hearing, S.R. testified to her preference as to where she wanted to live and the facts of the case. Also, Mother, Father, and three of Father's friends testified.

On January 9, 2009, the trial court entered a nine-page order containing detailed findings of fact. In its findings of fact, the trial court reviewed the factors contained in Tenn. Code Ann. § 36-6-106(a) and determined the best interests of the children based on those factors. Specifically, the trial court found that: (1) Mother was the primary care giver of R.R. and that Father did not take care of the needs of the child; (2) Father committed child sexual abuse on his daughter, as defined by Tenn. Code. Ann. § 37-1- 601; (3) Father's testimony regarding this incident contradicted his previous testimony; (4) daughter is afraid of Father and does not want to live or visit with him; and (5) the Father's three witnesses demonstrated hostility toward Mother and were not credible. Based on these findings, the trial court awarded Mother primary residential status and granted Father zero parenting time. Additionally, the order stated that Father would have the parental rights provided in Tenn. Code Ann. § 36-6-110 with R.R., but the court was silent as to these parental rights with S.R.

---

[1]We cannot tell from the record why there is a discrepancy between the two orders entered on November 15, 2007.

The trial court also ruled on child support. It imputed Mother's monthly income at $1,127.00. Concerning Father's income, the court found that Father was receiving $1,800 a month in social security retirement benefits, and that Father's business was grossing between ten and sixteen thousand dollars a month. Despite Father's testimony that his business has, in fact, lost money, the trial court noted that Father had failed to present any proof of income or loss. Moreover, the court found that Father paid his employees in cash, and made numerous withdrawals for himself (although the exact amounts were not known). Finding that Father did not show sufficient proof of his income, the court imputed an income of $37,589 to Father from his business. The trial court held that Father had an imputed monthly income of $3,132.00 plus $1,800 a month in social security benefits. Additionally, the trial court found that Mother was receiving $1,424 a month from Father's social security benefits. The trial court directed that child support be based on these amounts.

A separate parenting plan was entered on January 30, 2009. The parenting plan states that Father shall pay $1,127 a month in child support. The plan stated that because Mother was receiving benefits on behalf of the minor children attributable to Father's social security, in the amount of $1,424, Father was not required to pay any additional support. The parenting plan conformed to the trial court's order, naming Mother as primary residential parent and granting zero parenting time to Father. However, contrary to the trial court's order, the parenting plan indicates that both parents will have the parental rights enumerated in Tenn. Code. Ann § 36-6-101.[2]

On January 30, 2009, the trial court entered a Judgment. This judgment designated Mother as primary residential parent of both children, stated that Mother had proved sexual abuse by the Father, and allowed Mother to move to Victoria, Texas. Further, the judgment explicitly stated that Father had parental rights, as provided in Tenn. Code Ann. § 36-6-110, with R.R. only. The judgment further required child support to be calculated based on Father's monthly income of $4,932 and Mother's monthly income of $1,127 and required Father to pay any difference between what was required and what Mother was receiving from the Social Security Administration. The order also incorporated by reference the trial court's findings of fact.

Father appeals and raises five issues for our review. We restate them as follows:

1. Whether the trial court erred in not properly qualifying daughter as a competent witness?
2. Whether the trial court erred in not designating the Father as the primary residential parent?
3. Whether the trial court erred in granting zero parenting time to the Father?
4. Whether the trial court erred in allowing Mother to relocate to Victoria, Texas?
5. Whether the trial court erred in its calculation of Father's income?

Because this case was tried by the court sitting without a jury, we review this case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless

---

[2] Mother contends in her brief that this was error. However, no motion was made to alter or amend the parenting plan in order to correct the alleged error, nor was the parenting plan ever amended.

the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn. 1995)*; Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See **id**.; see also **Walton v. Young**,* 950 S.W.2d 956, 959 (Tenn. 1997).

## Child Witness

Father first argues that the testimony of S.R. should be excluded as she was neither properly qualified to be a competent witness, nor given a proper oath. Relying upon Tennessee Rules of Evidence, Rule 601 and Rule 602, Father states that, although all persons are presumed to be competent witnesses, in order to testify, the witness must have personal knowledge of the matter and must make an oath or affirmation to testify truthfully. Additionally, Father asserts that, in dealing with a child witness, the court must take an extra step to determine whether the child is competent to testify and whether he or she can grasp the difference between the truth and a lie.

S.R., age 13 at the time, testified first at trial. By agreement of the parties, the daughter's preference as to where she wanted to live was heard in the court room, while Mother and Father were absent. The transcript does not indicate that the attorneys were absent. Daughter's testimony as to her preference was not recorded. After giving her preference, the parties returned to the court room and the trial court stated:

> "[S.R.], you were - - when the parties, your parents, were outside, I
> swore you in, and you promised to them and everybody in here that
> you would tell the truth; is that true?"

S.R. responded, "Yes, sir," and the examination continued. No objection was made as to S.R.'s competence as a witness or to the validity of the oath. Because Father failed to object to S.R.'s testimony at trial, he has waived his right to challenge the admissibility of her testimony in this Court*. **Baxter v. Vandenheovel***, 686 S.W.2d 908, 911 (Tenn. 1984).

Further, Rule 6 of the Court of Appeals requires that written argument on each issue on appeal contain:

> (2) A statement showing how such alleged error was seasonably
> called to the attention of the trial judge with citation to that part of the
> record where appellant's challenge of the alleged error is recorded.
> *            *            *

-4-

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such facts is recorded.

There is no indication in Father's brief (or, in fact, in the transcript) that he objected to the testimony given by S.R. Father failed to cite to any objection to S.R.'s testimony in the record as required by the Rules of the Court of Appeals. Pursuant to Rule 6, in the absence of any citation to an objection in his brief, this Court cannot consider the issue on appeal.

## Custody

Determining custody is one of the most important decisions a trial court will make. *See Steen v. Steen,* 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). In making this determination, the paramount interest of the court is the welfare of the child. *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Courts are to apply the doctrine of comparative fitness to determine the custody arrangement that is in the best interest of the child. *Burden v. Burden*, 250 S.W.3d 899, 908-09 (Tenn. Ct. App. 2008). In making this determination, the court is to use the factors contained in Tenn. Code Ann. § 36-6-106(2007). The trial court has wide discretion in making custody determinations. *Lee v. Lee*, 66 S.W.3d 837, 851 (Tenn. Ct. App. 2001). However, these decisions must be based on evidence and on the application of the relevant principles of law. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct App. 1995). Accordingly, we will only set aside the trial court's determination if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 81, 88 (Tenn. 2001).

In its memorandum opinion, the trial court carefully and explicitly analyzed each factor in Tenn. Code Ann. § 36-6-106, and determined the best interests of the children based on those factors. Specifically, the trial court found that Mother was the primary caregiver to both of the children, and that Father did not take care of the needs of R.R. In making this determination, the trial court noted that, although Father presented the testimony of three witnesses who testified that he was a good Father, based on the demeanor of these witnesses, there was hostility towards the Mother; consequently, the trial court found the witnesses unreliable, and gave their testimonies little weight. The trial court also found that Father had committed child sexual abuse on his daughter, as defined by Tenn. Code. Ann. § 37-1-601. As a result of this abuse, the trial court found that daughter is afraid of Father and does not want to live with or visit him.

The trial court noted that Mother intended to move to Victoria, Texas, where her parents and other relatives reside. While acknowledging Father's objection to the move, the court found that father's objection was based upon Father's belief that, if Mother was allowed to move, R.R. would lose his government health benefits, and would have to change health care providers. The trial court,

however, found that there was no evidence to indicate that there were not medical providers that could treat R.R. in Victoria. The trial court found that daughter desired to move to Texas because of the embarrassment caused by Father's sexual battery trial. Concerning the factor, "stability of a family unit of the parents," the court found that the evidence weighs in favor of Mother as she has relatives in or near Victoria and Father testified that he has no family in the Hardin County area.

The trial court found that the "home, school, and community records of the child," weighed in favor of Mother as both children were doing well in school and there was nothing to indicate daughter could not perform in another school, especially because she would be away from students who may be embarrassing her because of her father's trial.

The trial court found that the preference of the child weighs in favor of Mother as daughter expressed her preference to reside with Mother.

The trial court then looked to evidence of physical or emotional abuse to the child. The trial court credited daughter's testimony that Father had touched her between her legs over her pajama bottom and under her t-shirt. The trial court found that Father's testimony that daughter fell asleep on his arm which was between daughters legs and his denial of touching her under her shirt contradicted his prior testimony in which he stated that he accidently touched her breasts as he was scratching her back. Additionally, the trial court found that Father had previously engaged in inappropriate conduct by video taping Mother's oldest daughter in her bedroom. The trial court found that father committed sexual abuse as defined by Tenn. Code Ann. § 37-1-602, by a clear preponderance of the evidence.

Based on these findings, the trial court held that Mother should be designated the primary residential parent and should be allowed to relocate to Victoria, Texas. After reviewing the entire record in this case, including the testimony of all witnesses, we find that the evidence does not preponderate against the trial court's findings of fact and that the trial court appropriately weighed all of the relevant factors. Accordingly, we affirm the trial court's designation of Mother as the primary residential parent for both minor children.

Father also submits that the trial court erred by failing to apply Tenn. Code Ann. § 36-6-108 (d)(1) to this case.[3] Father contends that if the trial court had correctly applied Tenn. Code Ann.

---

[3]Tenn. Code Ann. §36-6-108(d)(1) provides:

> If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with

(continued...)

§ 36-6-108(d)(1), it would not have allowed Mother to relocate to Victoria, Texas with the children.

This Court, in *Gregory v. Gregory,* No. W2002-01049-COA-R3-CV, 2003 Tenn. App. LEXIS 499 (Tenn. Ct. App. 2003 ), addressed the issue of which standard the trial court should apply when making an initial custody determination where one parent plans on relocating out of state with the minor child. In *Gregory*, the father filed for divorce and requested joint custody. *Gregory*, 2003 Tenn. App. LEXIS at *1. Soon after filing, Mother received a promotion requiring her to move to Texas. *Id.* at *2. The trial court applied a best interest analysis using the factors in Tenn. Code. Ann § 36-6-106 and named father the primary residential parent. *Id.* at *4. The mother in *Gregory* appealed, submitting that the trial court erred in not applying the factors provided in Tenn. Code Ann. § 36-6-108(d). *Id.* This is the same issue we have before us in the instant case.

In *Gregory*, we noted that Tenn. Code Ann. § 36-6-108(d) had previously only been applied to modification of custody situations. *Id.* at *6. In *Gregory*, this Court held that, in making an initial custody decision, the trial court must "consider what is in the child's best interests," and that determination "depends on the facts and circumstances of the case." *Id.* at *10. We further held that the trial court in *Gregory* was correct in applying the best interest of the child approach as provided in Tenn. Code Ann. § 36-6-106. *Id.* at *15; see also *Annear v. Clouse*, No. E2006-02120-COA-R3-CV, 2007 Tenn. App. LEXIS 637 at *10-11 (Tenn. Ct. App. 2007). As in *Gregory*, the record shows that, in this case, the trial court considered Mother's relocation in making its best interests analysis under Tenn. Code. Ann. § 36-6-106. Consequently, we find that the trial court did not err when it did not apply the factors in Tenn. Code. Ann. § 36-6-108(d) in its decision to allow Mother to relocate.

## Visitation

The final issue Father raises on appeal regarding the parenting plan, is that the trial court erred in granting him no parenting time with either minor child. "[T]he details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)(quoting *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Unless the trial court abuses its discretion, we will not reverse its decisions on visitation. *Id.* A trial court abuses

[3](...continued)
the child shall be permitted to relocate with the child unless the court finds:
(A) The relocation does not have a reasonable purpose;
(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

its discretion "when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic to the party complaining.'" ***Id.*** (quoting ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999).

In visitation cases, the paramount consideration is the welfare of the child. ***Suttles***, 748 S.W.2d at 429. However, this state has a clear public policy "that the non-custodial parent be awarded visitation reasonably sufficient to maintain the parent-child relationship." ***In the Matter of Z.A.W.***, No. W2005-01956-COA-R3-JV, 2006 WL 1627180 at *4 (Tenn. Ct. App. 2006)(citing ***Burlew v. Burlew***, No. W2005-00526-COA-R3-CV, 2006 WL 26361 at *4-5 (Tenn. Ct. App. 2006)); ***In re S.C.H.*** No. M2003-01382-COA-R3-CV, 2004 WL 2941151, at *4-5 (Tenn. Ct. App. 2004)(citing ***Suttles***, 478 S.W.2d at 429.)); see also Tenn. Code Ann. § 36-6-301 (2009). Accordingly, "the least restrictive visitation limits are favored in order to encourage the parent-child relationship." ***Id.*** (citing ***Eldridge***, 42 S.W.3d at 85). That being said, "[n]o hard and fast rules exist for determining which custody and visitation arrangement will best serve a child's needs." ***Gaskill v. Gaskill***, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996)(citations omitted).

In creating an appropriate visitation plan, the trial court has the ability to place reasonable conditions and restrictions on visitation. *See* ***Brewster v. Brewester***, No. M2000-01174-COA-R3-CV, 2001 WL 401600 (Tenn. Ct. App. 2001)(developing a plan of counseling to facilitate visitation); ***Odom v. Odom***, No. M1999-02811-COA-R3-CV, 2001 WL 1543476 (Tenn. Ct. App. 2001)(allowing the child to call her psychiatrist during visitation and to terminate the visitation); ***Raines v. Raines***, No. 85-177-II, 1985 WL 3431 (Tenn. Ct. App. 1985)(requiring supervised visitation); *see also* 19A Tenn. Prac. Tenn. Divorce, Alimony, & Child Custody § 24:4 (2009). "Nevertheless, the non-custodial parent's visitation 'may be limited, or eliminated, if there is definite evidence that to permit...the right would jeopardize the child, in either a physical or moral sense." ***Eldridge***, 42 S.W.3d at 85(quoting ***Weaver v. Weaver***, 261 S.W.2d 145, 148 (Tenn. Ct. App. 1953)); see also Tenn. Code Ann. § 36-6-301 (2009)[4] and ***Suttles,*** 748 S.W.2d at 429 . As this court has previously stated,

> Because of the legal and psychological significance of a parent's visitation rights, persons seeking to restrict or eliminate visitation must demonstrate that there is probable cause that the child will be

---

[4] Tenn. Code Ann. § 36-6-301 provides:

> After making an award of custody, the court shall, upon request of the non-custodial parent, grant such rights of visitation as will enable the child and the non-custodial parent to maintain a parent-child relationship unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health. In granting any such rights of visitation, the court shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays, birthdays of family members, vacation and other special occasions. If the court finds that the non-custodial parent has physically or emotionally abused the child, the court may require that visitation be supervised or prohibited until such abuse has ceased or until there is not reasonable likelihood that such abuse will recur....

placed at risk if visitation is permitted. The Tennessee Supreme Court requires that this proof must be "definite," ***Suttles v. Suttles***, 748 S.W.2d at 429, and Tenn. Code Ann. § 36-6-30 requires that the proof demonstrate that visitation is "likely" to endanger the child's physical or emotional health." These evidentiary standards have effectively created a presumption against severely circumscribing or denying visitation to non-custodial parents. Such drastic measures are only appropriate when arrangements less detrimental to the parent-child relationship are not available or workable as a practical matter.

***Bueno v. Todd***, No. W2005-02164-COA-R3-CV, 2006 WL 2106006 at *6 (Tenn. Ct. App. 2006)(quoting ***Wix v. Wix***, No. M2000-00230-COA-R3-CV, 2001 WL 219700 at *11(Tenn. Ct. App. 2001)). "[T]ermination of visitation, which has the practical effect of terminating the parent-child relationship, must be supported by specific findings that visitation by the non-custodial parent will result in physical, emotional, or moral harm to the child. ***In the Matter of Z.A.W.***, 2006 WL 1627180 at *5 (citing ***Eldridge***, 42 S.W.3d at 85).

Accordingly, there is a specific process the trial court must follow when limiting, suspending or terminating visitation. First, the trial court must make a specific finding, based on definite evidence, that visitation would cause harm to the child. ***Eldridge***, 42 S.W.3d at 85. After making this finding, the trial court must then determine the least restrictive visitation plan as available and practical. ***Bueno***, 2006 WL 2106006 at *6. In determining the least restrictive visitation plan, the trial court must make specific findings, based on definite evidence, that any less restrictive visitation would be harmful to the child. ***Id.*** The burden of proof on both the issue of harm and the least restrictive visitation plan, is on the party seeking to restrict visitation. ***Id.*** In making these determinations, the trial court must bear in mind that "it is the public policy of the state of Tennessee that courts *shall* grant parenting time with the non-custodial parent unless visitation will harm the child." ***Kershaw v. Kershaw***, No.M2009-00151-COA-R3-CV (Tenn. Ct. App November 20, 2009)(emphasis added).

In this case the trial court applied a best interests analysis in determining that Father would not have any visitation with the children. The trial court found that S.R.'s preference[5] is to not have any residential sharing time with her father, that S.R. is afraid of her father, and that it had been proven by a clear preponderance of the evidence that Father had sexually abused S.R. Based on these findings, the court found that it would be in the best interest of S.R. that Father not have any visitation with her. The trial court found that there was no evidence that Father had abused R.R.; however, based upon the abuse of S.R., the history of lack of care for R.R. and R.R.'s limited mental

---

[5] S.R.'s preference was heard off the record. The parties did not stipulate on the record to what she said. However, the trial court found that her preference was to not have any parenting time with her father. Neither party objected to the child's preference being heard off the record nor did either party make an offer of proof as to the child's preference on the record. Therefore, we defer to the trial court's finding as to S.R.'s preference.

capacity, the trial court held that Father should also not have any "residential sharing time" with R.R.[6]

Although utilized by the trial court, a best interests analysis is inappropriate; instead there must be definite evidence that visitation would result in harm to the child. *Suttles*, 748 S.W.2d at 429. Although not specifically stated by the trial court, but implied in its findings, is a determination that visitation may be harmful to S.R. However, the law in Tennessee requires more than mere inferences to deny a parent time with his children. "A non-custodial parent's visitation 'may be limited, or eliminated, if there is definite evidence that to permit...the right would jeopardize the child, in either a physical or moral sense. *Kershaw,* M2009-00151-COA-R3-CV (quoting *Eldridge*, 42 S.W.3d at 85)(quoting *Suttles*, 748 S.W.2d at 429). The trial court made no findings that Father would "jeopardize" the children during visitation.

However, even if the trial court had determined that visitation with Father would harm S.R. and R.R, it would not end the required analysis. While the "paramount consideration" in crafting a visitation plan is the welfare of the child, *Eldridge* 42 S.W.3d at 86 (citations omitted), it is the clear public policy of this state that the non-custodial parent be awarded reasonable visitation in order to maintain the parent-child relationship. *Suttles*, 748 S.W.2d at 429. The trial court may "restrict, suspend, or terminate visitation rights" based upon "clear and definite evidence" that visitation would harm the child. *Bueno*, 2006 WL 2106006 at *5 (citing Tenn. Code Ann. § 36-6-301; *Suttles*, 748 S.W.2d at 429; *Helson v. Cyrus*, 989 S.W.2d 704, 707 (Tenn. Ct. App. 1998); *Weaver v. Weaver*, 261 S.W.2d at 148. "But absent such findings, the public policy of this state is that the court *shall* 'grant such rights of visitation as will enable the child and the non-custodial parent to maintain a parent-child relationship.'" *Helson v. Cyrus*, 989 S.W.2d at 707 (citing Tenn. Code Ann. § 36-6-301 and *Pizzillo v. Pizzillo*, 884 S.W.2d 749 (Tenn. Ct. App. 1994)(emphasis original). Furthermore, it is incumbent on "persons seeking to restrict or eliminate visitation," in this case Mother, to "demonstrate that there is probable cause that the child will be placed at risk if visitation is permitted." *Bueno*, 2006 WL 2106006 at *6 (quoting *Wix*, 2001 WL 219700 at *11). "The Tennessee Supreme Court requires that this proof be 'definite'" *Id.* (citing *Suttles*, 748 S.W.2d at 429). This effectively creates a presumption against severely limiting or denying visitation completely. *Id.* Consequently, the trial court must adopt the least restrictive visitation plan "available or workable as a practical matter." *Id.*

In this case, the trial court failed to make any specific findings that any other less restrictive visitation plan, other than complete denial of visitation, would result in harm to S.R. or R.R. We have reviewed the record and find that as it stands, it does not support a finding by "clear and definite" evidence that complete denial of visitation is the least restrictive plan available. In fact, with respect to R.R. the record indicates that a less restrictive visitation plan is available. During the

---

[6]The trial court may limit visitation if the court determines that the parent has committed sexual abuse on a person living with the child. Tenn. Code Ann. § 36-6-406(a)(2). Therefore, upon finding that Father sexually abused S.R., the trial court may limit visitation with R.R. However, it is not clear from the record that this is why the trial court denied visitation with R.R.

pendency of the divorce, Father participated in supervised visitation with R.R. for two hours twice a week. There is no evidence of harm resulting from this visitation and Mother herself testified that visitation with R.R. had gone peacefully and normally. Consequently, we must remand this case to the trial court for it to receive additional evidence on the harm caused to each child by visitation with Father. After receiving additional evidence, the trial court is directed to make the required findings and to create the least restrictive visitation plan as available and practical, bearing in mind that the children's welfare is of paramount consideration.

It further appears from the trial court's orders, although inconsistent, that it was ordering that Father only have the statutory parental rights provided in Tenn. Code Ann. §§ 36-6-101 and -110 with R. R. These statutory provisions grant rights to the non-custodial parent such as the right to telephone calls, the right to send the child mail, the right to notice and information of any major illness, hospitalization or death of the child; the right to receive school records directly from the child's school; the right to receive medical records from the child's doctor and the right to be free from derogatory remarks . See Tenn. Code Ann. §§ 36-6-101 and -110. These rights may be limited in whole or part based upon a finding that they are not in the best interests of the child. ***Gentry v. Gentry***, No. M2004-00640-COA-R3-CV, 2005 WL 901145, at *9 (Tenn. Ct. App. 2005); see also Tenn. Code Ann. §§ 36-6-101 and -110. Absent a finding that the rights are not in the best interest of the child, these rights must be granted. ***Id.***

In this case, the trial court made no findings that these rights or any portion of them would not be in the best interest of either child. Additionally, there is no evidence in the record that the statutory rights provided to the non-custodial parent would be harmful to either child. Because the trial court failed to make specific findings that the rights provided in Tenn. Code. Ann §§ 36-6-101 and -110 would not be in the best interest of the child, we find that the trial court erred in its application of law and vacate its decision to limit Father's statutory parental rights. Accordingly, in hearing additional proof, the trial court should determine whether, and to what extent the rights of the non-custodial parent should be limited.

In sum, we find that the trial court applied an incorrect legal standard when it awarded Father no parenting time with either child. Upon rehearing, the trial court is directed to make specific findings, based on clear and definite evidence that visitation would be harmful. The trial court must then consider whether any visitation plan less restrictive than a complete denial, is available in order to maintain the parent-child relationship, without causing harm to S.R. or R.R. The trial court is to then develop the least restrictive visitation plan available for each child. The trial court should include the rights of the non-custodial parent as appropriate. The trial court must keep in mind that while the welfare of the child is of paramount concern, it is to adopt the least restrictive visitation plan available so as to foster the parent-child relationship.

### Calculation of Father's Income

Father's final issue is that the trial court erred in the calculation of his income. The trial court found "that Father did not show sufficient proof of income" and imputed an income of $37,589 to Father from his business, in addition to the $1,800 a month he received in social security benefits.

-11-

The trial court ordered Father to pay child support as required by the child support guidelines based on these amounts. Father was ordered to pay any amount of the calculated child support that exceeded what Mother was receiving from Social Security. According to the guidelines, Father is required to pay $1,180 a month to Mother. Mother receives $1,424 from Father's social security benefits and therefore Father does not pay anything additional to Mother.

For purposes of calculating child support, gross income includes all income, from any source, whether earned or unearned. Tenn. Comp. R. & Regs. 1240-2-4-.04(g)(2)(A). The Tennessee Child Support Guidelines allow the trial court to impute income when there is no reliable evidence of income:

> (iv) Imputing Income When There is No Reliable Evidence of Income.
>
> (I) When Establishing an initial Order.
>
> I. If a parent fails to produce evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support...); and
>
> II. The tribunal has no reliable evidence of the parent's income or income potential;
>
> III. Then, in such cases, gross income for the current and prior years shall be determined by imputing annual gross income of thirty-seven thousand five hundred eighty-nine dollars ($37,589) for male parents and twenty-nine thousand three hundred dollars ($29,300) for female parents. These figures represent the full time, year round worker's median gross income, for the Tennessee population only, from the American Community Survey of 2006 from the U.S. Census Bureau.

Tenn. Comp. R. & Regs. 1240-2-4-.04(iv).

We have reviewed the record and find little, if any, reliable evidence on Father's income. According to Father's testimony, the business has gross profits of between ten and sixteen thousand dollars a month, or about one hundred seventy thousand dollars annually. However, Father testified that, after expenses, his business makes no profit. Father further testified that, in 2007, the business lost $6,200, but he did not provide a 2007 tax return. In fact, Father provided no documentation whatsoever as to his income or the income and expenses of the business. Additionally, Father testified that the business pays his rent and cell phone bills and that if he takes any money for himself out of the business, he does so in the form of a loan. However, he presented no evidence, other than his testimony, to support this claim. The only other evidence concerning Father's income was Mother's testimony. Mother, having worked as a bookkeeper for the business, testified that the

business had gross profits of between ten and fourteen thousand dollars a week.

Based on our review of the record, we find that the trial court was correct in finding that there was no reliable evidence of Father's income. Therefore, the trial court did not err in imputing an income of $37,589 in accordance with the Tennessee Child Support Guidelines.

Mother requests attorney fees on appeal. It is within this Court's discretion to award attorney fees on appeal. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney fees on appeal, we consider the following factors: 1) the requesting party's ability to pay such fees, 2) the requesting party's success on appeal, 3) whether the appeal was taken in good faith, and 4) any other equitable factors relevant in a given case. *Carpenter v. Carpenter,* No. W2007-00992-COA-R3-CV, 2008 WL 5424082, at *16 (Tenn. Ct. App. 2008)(citations omitted). Using our discretion, we decline to award attorney fees as requested by Mother.

## Conclusion

In sum, we affirm the trial court's grant of primary residential status to Mother and its decision to allow Mother to relocate. We find that, by failing to object at trial, Father waived his right to object to the testimony of S.R.. However, finding that the trial court failed to apply the proper legal standard by failing to make specific findings of harm caused by visitation and by failing to determine the least restrictive visitation plan available, we vacate the trial court's award of no parenting time to Father with either child, and remand for introduction of further evidence. Once that evidence is adduced, the trial court is directed to make specific findings of harm caused by visitation and determine the least restrictive visitation plan available and practical, keeping in mind that the welfare of the children is of paramount consideration. Costs of this appeal are taxed one-half against Appellant, Howard Thomas Rudd, and his surety and one-half to Appellee, Cassandra Lynn Rudd, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, J.